937 F.2d 569
 INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,
Counterdefendant-Appellant, Cross Appellee,
v.
Clausson P. LEXOW, United Storage Systems, Inc. d/b/a The
Extra Closet of Ocala, Ltd., Defendants,
Counterclaim-Appellees, Cross Appellants.
 No. 90-3331.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 1, 1991.
 
 Carol A. Falvey, Ocala, Fla., and Robert Paul Keeley, Ellis, Spencer, Butler & Kisslan, Hollywood, Fla., for appellant.
 Charles M. Johnston, Taylor, Day & Rio, Jacksonville, Fla., for appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This case presents the issues under Florida law of whether an insured is entitled to prejudgment interest at the statutory rate for recovery on a loss and whether the insured is entitled to attorney's fees upon determination that the insured, rather than the insurer, is entitled to funds recovered from the tortfeasor responsible for the insured's loss. The district court awarded prejudgment interest at the statutory rate and denied the insured's request for attorney's fees. Upon review of the record and applicable law, we affirm the award of prejudgment interest at the statutory rate and certify to the Supreme Court of Florida the attorney's fee question.
 
 I. BACKGROUND
 
 2
 In 1981, Clausson Lexow and other family members organized United Storage Systems, Inc. (collectively, Lexow) to operate as a mini-warehouse or consumer storage facility in Ocala, Florida. Known as The Extra Closet of Ocala, Ltd., the business opened to the public in January, 1982. The business prospered, and renovation of the building commenced. When the work was near completion, an electrical fire occurred and totally destroyed the building and its contents on August 1, 1983. The damage to stored property generated customers' lawsuits and such unfavorable publicity that Lexow decided not to rebuild and to start the business anew.
 
 
 3
 Pursuant to Lexow's claim submitted to its insurer, Insurance Company of North America (INA), Lexow received $430,571.26 for which a subrogation receipt was executed. INA and Lexow jointly sued in state court the two tortfeasors deemed to be responsible for the fire. Each of the tortfeasors had insurance with policy limits of $100,000. During the litigation, one of the tortfeasors was placed in receivership. While Florida law precluded INA from recovery against an insolvent insurer, Lexow obtained $99,900 from the receivership. Thereby, Lexow increased the funds that it had recovered for the loss to $530,471.26. The insurance carrier for the other tortfeasor paid its policy limits of $100,000, which amount INA placed in an interest bearing account.
 
 
 4
 Based on diversity jurisdiction, INA subsequently instigated an action in federal court in the Middle District of Florida for a declaratory judgment regarding the rights and obligations of INA and Lexow with respect to the $100,000.[1] Lexow filed a counterclaim requesting attorney's fees and costs if the court entered judgment in its favor. INA asserted its right to the $100,000 under the subrogation receipt. Lexow claimed the proceeds because the funds that it had received were insufficient to recompense its total loss. Consequently, Lexow has contended throughout this litigation that INA's subrogation right cannot be activated until Lexow has been reimbursed completely.
 
 
 5
 Following a nonjury trial, the district court determined that Lexow was entitled to the $100,000 because Lexow had sustained total damages in excess of $630,471.26, or the $530,471.26 already received plus the $100,000 in dispute. Using the common law subrogation principle, endorsed by Florida courts, the district court reasoned that the insured was entitled to be made whole before the subrogated insurer could participate in the recovery from a tortfeasor. The district court concluded that the subrogation receipt did not function as an assignment of Lexow's claim against the tortfeasors, but was an acknowledgment of INA's common law right of subrogation. Judgment was entered for Lexow, and Lexow's entitlement to the $100,000 is not an issue in this case.
 
 
 6
 Subsequently, Lexow filed a motion, requesting the district court to determine prejudgment interest as well as to award costs and attorney's fees. Under Florida law, the district court awarded Lexow prejudgment interest at the annual rate of 12% from February 23, 1988, the date that INA obtained the disputed $100,000, until July 12, 1989, the date that judgment was entered in Lexow's favor. The district court, however, denied Lexow's motion for attorney's fees. The parties appeal these district court rulings, which we address.[2]
 
 II. DISCUSSION
 A. Standard of Review
 
 7
 In a diversity case, a federal court applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190 (1991). While "we generally accord deference in diversity cases to a district court's interpretation of the law of the state in which it sits," the Supreme Court has "conclude[d] that a court of appeals should review de novo a district court's determination of state law." Abbott v. Williams, 888 F.2d 1550, 1552 (11th Cir.1989); Salve Regina College, --- U.S. at ----, 111 S.Ct. at 1221. "It is well settled that federal courts are bound by the interpretation of a state statute by state courts." Silverstein v. Gwinnett Hosp. Auth., 861 F.2d 1560, 1569 (11th Cir.1988). In applying state law, a federal court must "adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983).
 
 B. Prejudgment Interest
 
 8
 In Florida, prejudgment interest is an element of compensatory damages and, "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985); Air Prods. & Chemicals, Inc. v. Louisiana Land & Exploration Co., 867 F.2d 1376, 1380 (11th Cir.1989) (per curiam). In Argonaut, Florida adopted a "loss theory" of prejudgment interest, defining the loss as the wrongful deprivation of property. Argonaut, 474 So.2d at 215; Crockett v. State Farm Fire & Casualty Co., 849 F.2d 1369, 1372 (11th Cir.1988). After determination of the amount of damages and defendant's liability, the plaintiff is to be made whole by an award of prejudgment interest from the date of the loss. Argonaut, 474 So.2d at 215.
 
 
 9
 The Florida Supreme Court also has emphasized that the judiciary is without discretion to set an interest rate, and is obligated to follow Florida Statutes, Sec. 687.01:
 
 
 10
 Furthermore, just as the loss theory forecloses discretion in the award of prejudgment interest, there is no discretion in the rate of that interest. The legislature has established a statutory interest rate which controls prejudgment interest. Sec. 687.01, Fla.Stat. (1983).
 
 
 11
 ....
 
 
 12
 The amount of interest to be paid, absent a controlling contractual provision, is a matter of policy to be determined by the legislature. The judiciary does not have discretion in this matter but must apply the statutory interest rate in effect at the time the interest accrues.
 
 
 13
 Id. The applicable statutory interest rate was 12% per annum, and the parties had no written agreement for a lower rate of interest.[3]
 
 
 14
 Lexow had to litigate its entitlement to the $100,000 settlement proceeds, while INA earned interest on these funds. Nevertheless, INA contends that Lexow should accept the presumptively lower interest rate earned on the escrowed funds. In the absence of a written agreement between the parties for a different interest rate, the statutory interest rate must be used. The district court correctly awarded Lexow prejudgment interest at the statutory interest rate of 12%.[4]
 
 C. Attorney's Fees
 
 15
 Florida Statutes, Sec. 627.428 provides attorney's fees to an insured that obtains a judgment against an insurer. The Florida Supreme Court, quoting the appellate court in the case, has explained that " '[t]he purpose of the statute is to discourage contesting of valid claims of insureds against insurance companies.... and to reimburse successful insureds reasonably for their outlays for attorney's fees when they are compelled to defend or to sue to enforce their contracts....' " Wilder v. Wright, 278 So.2d 1, 3 (Fla.1973). Clarifying the applicability of the statute, the Florida Supreme Court also stated that "[t]he statute is unambiguous in its terms and clearly applies to all insureds under an insurance contract." Industrial Fire & Casualty Ins. Co. v. Prygocki, 422 So.2d 314, 316 (Fla.1982). In pertinent part, the statute provides as follows:
 
 
 16
 Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
 
 
 17
 Fla.Stat. Sec. 627.428(1) (1987) (emphasis added).
 
 
 18
 "The fundamental rule in Florida has been that an 'award of attorneys' fees is in derogation of the common law and that statutes allowing for the award of such fees should be strictly construed.' " Roberts v. Carter, 350 So.2d 78, 78-79 (Fla.1977) (quoting Sunbeam Enters., Inc. v. Upthegrove, 316 So.2d 34, 37 (Fla.1975)). Therefore, "[t]he trial court's jurisdiction to award an attorney fee to an insured is dependent upon the conditions imposed by the statute [Fla.Stat. Sec. 627.428(1) ]." AIU Ins. Co. v. Coker, 515 So.2d 317, 318 (Fla. 2d DCA 1987), review denied, 523 So.2d 576 (Fla.1988). Quoting the appellate court in the case, the Florida Supreme Court explained that the individuals entitled to recover attorney's fees under section 627.428(1) are either " 'an insured or the named beneficiary under a policy or contract executed by the insurer.' " Prygocki, 422 So.2d at 316; see Coker, 515 So.2d at 318 ("Third party claimants are not within the class of insureds under a contract and, thus, are not entitled to recover an attorney's fee pursuant to section 627.428(1)."). "The paramount condition is the entry of a judgment against the insurer and in favor of the insured." Travelers Indem. Co. v. Chisholm, 384 So.2d 1360, 1361 (Fla. 2d DCA), petition for review denied, 392 So.2d 1372 (Fla.1980); see Vermont Mut. Ins. Co. v. Bolding, 381 So.2d 320, 321 (Fla. 5th DCA 1980) ("There is no dispute as to the fact the judgment was against an insurer; the appellant issued the insurance policy."); American Bankers Ins. Co. v. Benson, 254 So.2d 851, 853 (Fla. 3d DCA 1971) ("This statute must be strictly construed, and in this case no judgment was rendered against the insuror, American Bankers, which permits the recovery of attorneys' fees."). It is uncontroverted in this case that Lexow was the insured under a policy issued by INA, and that judgment was obtained by Lexow against INA, the insurer. Provided that these requisite conditions are met, we note that the literal language of the statute appears to direct an appellate court to award attorney's fees to a successful insured.
 
 
 19
 The issue that the parties dispute is whether Lexow's entitlement to the $100,000 was "under a policy or contract" executed by INA because of the subrogation receipt signed by Lexow. Fla.Stat. Sec. 627.428(1). Citing cases from the First District Court of Appeal, INA contends that, because it fully paid to the insured, Lexow, its first-party insurance benefits, subsequent recovery from the tortfeasor did not arise under the insurance policy and that the contest for the money was in the nature of an in rem action against these funds. Government Employees Ins. Co. v. Graff, 327 So.2d 88, 92 (Fla. 1st DCA 1976); Forsyth v. Southern Bell Tel. & Tel. Co., 162 So.2d 916, 921-22 (Fla. 1st DCA 1964); cf. Litiz Mut. Ins. Co. v. Bowdoin, 365 So.2d 173, 176 (Fla. 1st DCA 1978); Catches v. Government Employees Ins. Co., 318 So.2d 552, 553 (Fla. 1st DCA 1975) (When an insurer refuses to negotiate in good faith, which action constitutes denial of a material obligation of coverage, a successful insured is entitled to attorney's fees.), cert. denied, 333 So.2d 41 (Fla.1976). INA asserts that its dispute with Lexow over the $100,000 concerns a sum outside of its insurance contract with Lexow and, consequently, attorney's fees are not authorized under section 627.428(1).
 
 
 20
 In contrast, Lexow relies on a Second District Court of Appeal decision in which the insureds were awarded trial and appellate attorney's fees under section 627.428(1) for successfully defending a suit by the insurer to recover partial reimbursement for benefits paid to the insureds by the tortfeasor. Molyett v. Society Nat'l Life Ins. Co., 452 So.2d 1114, 1116 (Fla. 2d DCA 1984). Under the major medical policy at issue in Molyett, the insured had signed a subrogation assignment, as Lexow had done in this case. Lexow argues that it obtained a judgment from its insurer INA, and that this action concerning the $100,000 was an extension or continuation of the litigation regarding its policy with INA. Therefore, this case, including the trial in district court and this appeal, are under the policy or contract issued by the insurer INA.
 
 
 21
 Using the reasoning of the First District Court of Appeal, the district court concluded that Lexow's claim regarding the $100,000 was not a dispute involving Lexow's contract of insurance with INA. Because INA had discharged its contractual responsibility by paying Lexow its policy limits for the fire loss and had not withheld insurance proceeds, the district court determined that the disputed funds in this case did not arise under the insurance policy or contract between the parties. Additionally, the district court found that INA had not demonstrated bad faith because an insurance company does not wrongfully withhold benefits if the dispute is the type of claim reasonably expected to be resolved by a court. See Crotts v. Bankers & Shippers Ins. Co., 476 So.2d 1357, 1359 (Fla. 2d DCA 1985), review denied, 486 So.2d 595 (Fla.1986).
 
 
 22
 We find that the decisions of the First and Second District Courts of Appeal are inconsistent, and that the Florida Supreme Court has not addressed the precise attorney's fee issue presented to us. Because there are no clear, controlling Florida precedents to guide our determination of the attorney's fee issue in this case, we consider it appropriate to certify to the Florida Supreme Court for resolution this potentially recurring question regarding the award of attorney's fees under Florida's insurance law.
 
 
 23
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR
 
 THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF
 FLORIDA, PURSUANT TO ARTICLE 5, SECTION
 3(b)(6) OF THE FLORIDA CONSTITUTION
 
 24
 TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:
 
 
 25
 Based upon the facts recited herein, we certify the following question in the above-styled case to the Florida Supreme Court:
 
 
 26
 DOES THE PHRASE "UNDER A POLICY OR CONTRACT" IN FLORIDA STATUTES, Sec. 627.428(1) INCLUDE SUBSEQUENT LITIGATION TO DETERMINE WHETHER THE INSURED OR THE SUBROGATED INSURER IS ENTITLED TO FUNDS RECOVERED BY THE INSURED FROM A TORTFEASOR AFTER THE INSURER HAS PAID THE INSURED ITS POLICY LIMITS, ALTHOUGH THESE FUNDS ARE INSUFFICIENT TO COMPENSATE THE INSURED'S LOSS, FOR THE PURPOSE OF AWARDING ATTORNEY'S FEES TO THE INSURED ACQUIRING A JUDGMENT AGAINST THE INSURER FOR THE FUNDS RECEIVED FROM THE TORTFEASOR?
 
 
 27
 The phrasing of this question is not intended to limit the Florida Supreme Court in considering the various problems encountered by parties litigating section 627.428(1) claims. The entire record in this case and the briefs of the parties shall be transmitted to the Florida Supreme Court for assistance in answering this question.
 
 
 28
 In summary, we AFFIRM the statutory prejudgment interest awarded by the district court in this case, and we CERTIFY the attorney's fee question to the Florida Supreme Court for resolution.
 
 
 
 [1]
 Litigation between the parties commenced in state court, which ruled that Lexow was entitled to the settlement fund. On appeal, however, the Florida appellate court vacated this decision, held that the trial court was without jurisdiction to decide the issue, and indicated that federal district court was the appropriate forum to determine the entitlement question. Because of this decision by the Florida appellate court, the federal district court denied Lexow summary judgment on its affirmative defenses of collateral estoppel and res judicata. R2-44-2
 
 
 [2]
 This appeal does not concern the costs awarded to Lexow
 
 
 [3]
 The relevant Florida statute provides:
 Rate of interest in absence of contract.--In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be 12 percent per annum, but parties may contract for a lesser or greater rate by contract in writing.
 Fla.Stat. Sec. 687.01 (1987).
 
 
 [4]
 Lexow also requests postjudgment interest, although this request is not a formal issue in the case. Postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. Sec. 1961(a). Distinguishing between prejudgment interest and postjudgment interest, this court has explained that
 [t]here is a significant difference between pre- and post-judgment interest.... Post-judgment interest can hardly be considered part of an award for compensation on a claim. However, a successful claimant is theoretically entitled to receive the compensation on the date of entry of the judgment; in practice, this is not feasible, and post-judgment interest serves to reimburse the claimant for not having received the money in hand on that day. This is effectuated by the federal statute providing interest on all federal court judgments. 28 U.S.C. Sec. 1961. This is to be distinguished from pre-judgment interest, which forms part of the actual amount of a judgment on a claim.
 FIGA v. R.V.M.P. Corp., 874 F.2d 1528, 1533 (11th Cir.1989). Additionally, this court has held that, in awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute, 28 U.S.C. Sec. 1961(a), rather than the state interest statute. See G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir.1985) (holding that the federal interest statute governs the award of postjudgment interest instead of the Florida interest statute). Lexow is entitled to postjudgment interest under section 1961(a) on the entire judgment entered in this case. See Bank South Leasing, Inc. v. Williams, 778 F.2d 704, 706 (11th Cir.1985) (per curiam) ("Pursuant to this statute [28 U.S.C. Sec. 1961(a) ], Bank South was entitled to postjudgment interest on the entire award, including the punitive damages, from the date of the original judgment.").