MINDIS METALS, INC., Plaintiff-Appellant,

v.

TRANSPORTATION INSURANCE COMPANY, Transcontinental Insurance Company, Defendants-Appellees.

No. 99-13349

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

April 20, 2000.

Appeal from the United States District Court for the Northern District of Georgia.(No. 98-01991-CV-CC-1), Clarence Cooper, Judge.

Before COX and WILSON, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Plaintiff Mindis Metals, Inc. appeals the district court's grant of summary judgment to defendant Transportation Insurance Company on plaintiff's claim for indemnification for its settlement with Eureka Foundry Company. There is no consensus in other jurisdictions as to whether intentional conduct premised on erroneous information is an "accident" under a general liability insurance policy. *Compare, e.g., Red Ball Leasing v. Hartford Accident & Indem. Co.,* 915 F.2d 306, 309-12 (7th Cir.1990), *with Lumber Ins. Cos., Inc. v. Allen,* 820 F.Supp. 33, 34-36 (D.N.H.1993). In Georgia, however, such conduct is not an "accident," as explained by Judge Duross Fitzpatrick in *Macon Iron & Paper Stock Co., Inc. v. Transcontinental Ins. Co.,* No. 5:97-CV-168-4 (M.D.Ga. March 9, 1999), a copy of which is attached. There was no error in determining that plaintiff's conversion of Eureka's scrap metal was not an "accident" potentially qualifying plaintiff for indemnification under the terms of the insurance policy.

AFFIRMED.

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA MACON DIVISION

MACON IRON & PAPER STOCK COMPANY, INC., Plaintiff,

v.

TRANSCONTINENTAL INSURANCE COMPANY and Valley Forge Insurance Company, Defendants.

No. 5:97-CV-168-4 (DF)

*ORDER*

DUROSS FITZPATRICK, District Judge:

This case is before the Court on the parties' cross-motions for summary judgment. Plaintiff, Macon Iron and Paper Stock Co., Inc., ("Macon Iron") brought this suit seeking declaratory and injunctive relief against Defendants, Transcontinental Insurance Company ("Transcontinental") and Valley Forge Insurance Company ("Valley Forge"), regarding the Defendants' respective duties under the terms of their insurance agreements with the Plaintiff. For the reasons that follow, the Court agrees with Defendants that coverage was rightfully withheld, and that Defendants had no corresponding duty to defend Plaintiff in an underlying civil suit.

I.      *Background*

Plaintiff is engaged in the business of "scrap recycling." It has been in business in Macon, Georgia for nearly 80 years. Plaintiff purchased insurance from the Defendants, obtaining a comprehensive general liability policy ("CGL"), an umbrella policy, and a personal property policy.

From November, 1991 until January, 1993, Plaintiff purchased approximately 51 railcars from Joe Piekarski, the General Manager of Georgia Central Railroad. Unbeknownst to Plaintiff, Mr. Piekarski did not have permission to sell the railcars, and though some of Plaintiff's employees thought it odd that payment for the railcars was to be made to Mr. Piekarski personally, Plaintiff continued to buy railcars from him during this period. After buying the railcars, Plaintiff would then cut them up for us as scrap metal.

There is no evidence that Plaintiff paid anything other than full market value for the railcars. Unfortunately, the payments to Mr. Piekarski's personal account were not approved by the railroad. After discovering that some of its railcars had been sold without permission or compensation, one of the railroad

2

officials came to Macon Iron in the summer of 1993 and informed the company about what had happened. Macon Iron handed over its documentation on the sales and Mr. Piekarski was ultimately tried and convicted for stealing the railcars and keeping the money for his personal benefit. Georgia Central then brought suit against Macon Iron, claiming (1) that Macon Iron engaged in a pattern of "racketeering activity" in violation of O.C.G.A. § 16-14-3(8); (2) that Macon Iron conspired with Joe Piekarski to defraud Georgia Central of its property rights to the railcars and was therefore liable for the intentional tort of conspiracy; (3) that Macon Iron converted Georgia Central's stolen property; and(4) that punitive damages should be awarded because of Macon Iron's intentional conduct.

Macon Iron ultimately settled its dispute with Georgia Central, apparently paying them over $300,000 as part of the agreement. When Georgia Central's suit was originally filed, Macon Iron notified that Defendant-Insurance Companies and requested their assistance in defending against the charges. The insurance companies, however, refused to defend against Georgia Central's claims, insisting that Macon Iron would have to present its own defense because their policies did not cover the transactions involving Mr. Piekarski. This suit was then filed by Macon Iron to recover expenses incurred in defending itself as well as payment for the settlement it paid to Georgia Central.

II.     *Standard of Review*

Summary judgment may be granted where "there is no genuine issue as to any material fact." Fed.R.Civ.Proc. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Williams v. Vitro Services Corp.,* 144 F.3d 1438, 1441 (11th Cir.1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In reviewing a motion for summary judgment, the court must view the record and all inferences therefrom in a light most favorable to the nonmoving party. See *WSB-TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

3

Only when the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case" will the burden then shift to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, the mere presence of an alleged factual dispute between the parties does not make summary judgment improper; a genuine issue of *material* fact must exist for a court to deny summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

III.     *Legal Conclusion*

As in any dispute over insurance coverage, the Court begins by examining the source of coverage itself—the general promises of coverage made in the insurance policy. If the general policy does not cover the claim in question, an inquiry into any applicable exclusions is unnecessary. This case involves two different, but ultimately very similar insurance policies. Defendant-Transcontinental's policy insures against "property damage" that "is caused by an *occurrence.*" *Def.'s Mot.Summ. J., Ex. A.,* "Commercial General Liability Coverage Form" at 1 (Emphasis supplied). An "occurrence" is further defined in the policy as an "accident." Defendant-Valley Forge's policy is similar, except instead of using the word "occurrence," that policy insures the policyholder where property damage is caused by an "incident." *Def.'s Mot. Summ. J., Ex. A.,* "Commercial Umbrella Plus Coverage Part" at 1. An incident, however, is also defined as an "accident." *Id.* at 9. Both polices,then, say that coverage will only be provided when damage results from an "accident."

Both parties agree with that premise, but they disagree about what the term "accident" means. Plaintiff contends that an accident occurred in this case because it did not realize that it was harming Georgia Central when it scrapped the railcars bought from Mr. Piekarski. Defendant, by contrast, argues that while Plaintiff may have erroneously believed that it had good title to the railcars, this erroneous belief does not constitute an "accident" and since Plaintiff deliberately purchased and scrapped the railcars, it cannot recover under the general terms of the plan.

4

In support of its position, Plaintiff relies on several cases decided by Georgia Court of Appeals. "In applying state law, a federal court must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Insurance Co. of North America v. Lexow,* 937 F.2d 569, 571 (11th Cir.1991). The Georgia Supreme Court has never ruled on this issue, so this Court is bound to follow the decisions of the Georgia Court of Appeals in resolving this dispute.

Plaintiff principally relies on *Glens Falls Insurance v. Donmac Golf Shaping,* 203 Ga.App. 508, 417 S.E.2d 197 (Ga.App.1992), to support its position in this case. There, a golf course construction company built a golf course on federally protected wetlands. The company unquestionably *intended* to place the golf course where it did, but it did not intend to violate federal law doing so. Several lawsuits were filed against the company, and when it sought protection under its insurance policy (a policy similar to the one in the instant case), the insurance company attempted to deny coverage by claiming, among other things, that no "accident" had occurred. The Court of Appeals, reading the policy provision in conjunction with an exclusion for property damage "expected or intended from the standpoint of the insured," held that the exclusion was inapplicable. The exclusion did not apply, said the court, because the developer did not specifically intend the damage caused by its own negligence, namely, the placement of a golf course on federal wetlands. Applying that rationale to the instant case, Plaintiff argues that because it did not specifically intend to damage Georgia Central's property, it too should receive coverage under its CGL policy.

In *Georgia Farm Bureau Mutual Insurance v. Meriwether* 169 Ga.App. 363, 312 S.E.2d 823 (Ga.App.1983), the Court of Appeals took a position that, at least on the surface, appears to be in conflict with the decision in *Glens Falls.* In *Meriwether,* a property owner placed a gate across a road that he believed was on his property. In fact, the evidence showed that the gate might have been placed across public property. Another person sued the property owner, claiming that the property owner had injured him by closing a public

5

road. The property owner then sought protection under its insurance policy. The policy in that case provided the following coverage:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damages even if any of the allegations of the suit are groundless, false, or fraudulent.

*Meriwether,* 312 S.E.2d at 824 (Emphasis in original). An "occurrence" was defined in the policy as "... an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.*

The insurance company argued it had no duty to defend and coverage did not apply because no "accident" had occurred. The Court of Appeals agreed. "[T]here is no dispute in the present action concerning the fact that appellee intentionally blocked the disputed way. That being so, appellee's act cannot be said to be accidental and is, therefor, not an 'occurrence' within the definition of that word in the policy." *Id.* Seizing on this language, Defendant here argues that because Plaintiff acted intentionally when it bought and damaged the railcars, no "accident" occurred. Like the property owner in *Meriwether,* Plaintiff may have been mistaken about its property rights, but that mistake, according to the Defendant, does not amount to an "accident" as that term is commonly understood.

This Court agrees with the Defendant. Although there is language in *Glens Falls* that would seem to indicate that a mistake or error in judgment is tantamount to an "accident," such a reading of the case would bring it into an inherent conflict with that court's earlier decision in *Meriwether.* This Court has a duty to avoid interpreting the cases from the Georgia Court of Appeals in a manner that would bring about such a conflict. *See e.g. Garrett v. Heisler,* 149 Ga.App. 240, 253 S.E.2d 863, 867 (Ga.Ct.App.1979) (recognizing court's duty to reconcile opinions from the Georgia Supreme Court). A fair reading of *Meriwether* leads to the inevitable conclusion that an "accident" does not include damage to persons or property when that damage is intentionally inflicted, even where that intentional conduct is caused by erroneous information. *Glens Falls*

6

can be read without contradicting this understanding. In contrast to *Meriwether,* the court in *Glens Falls* was interpreting an *exclusion* to insurance coverage. "Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage in clear and explicit terms." *First Financial Ins. Co. v. American Sandblasting Co.,* 223 Ga.App. 232, 477 S.E.2d 390, 392 (Ga.Ct.App.1996). Viewing the intentional property damage *exclusion* narrowly, the Court in *Glens Falls* held that it did not apply because Plaintiff did not specifically intend to cause the damages alleged by the developer. *See Glens Falls v. Donmac Golf Shaping,* 417 S.E.2d at 199.

Whether or not an exclusion for intentional damage would apply in this case, the Court believes that the antecedent question of whether there was coverage in the first instance must be answered in the negative. A treatise on insurance law describes an accident as "an unusual or unexpected event, happening without negligence; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause." 11 Couch on Insurance § 44:288 at 443 (2d ed.1982). In fairness, the Georgia courts have recognized that people also commonly associate the word "accident" with intentional acts, which would of course include acts brought about by careless ness. *See e.g. Cohran v. Douglasville Concrete Products, Inc.,* 153 Ga.App. 8, 264 S.E.2d 507, 511 (Ga.Ct.App.1980). That said, what happened here was no "accident."

This case is similar to one decided by the Seventh Circuit, *Red Ball Leasing v. Hartford Accident & Indemnity Co.,* 915 F.2d 306 (7th Cir.1990). There, the insured was a lessor of four vehicles. Due to an accounting error, the insured believed that a lessee had defaulted on its payment when in fact it had not. Proceeding on this faulty assumption, the insured repossessed the leased vehicles. After being sued, the insured claimed it should be defended and reimbursed under the terms of its commercial liability insurance policy. In construing an insurance policy similar to the one in the instant case, the court in *Red Ball* held that coverage was not required because no "accident" had occurred:

> A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by

a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident ... However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Red Ball Leasing,* 915 F.2d at 311 (internal citations and footnotes omitted). Because the insured intentionally repossessed the trucks, the court in *Red Ball* found that no accident had occurred and that coverage was therefore not required.[1] See *id.*

As in both *Red Ball* and *Meriwether,* Plaintiff here may have made a mistake of fact and/or error in judgment, but it at all times acted in a deliberate and purposeful manner. Plaintiff confuses the issues in this case by arguing that it did not intend the result that occurred, namely, the harm to Georgia Central. As Plaintiff rightly points out, many "accidents" involve intentional conduct with unexpected results.[2] But when we say that the result of the intentional act is unexpected, we are referring to the direct and immediate result, not the indirect consequences or legal significance of a particular act. In *Meriwether,* there was no evidence that the property owner who blocked a public road by putting up a date intended to harm, in a legal sense, those who used that road. The owner there believed that he owned the property and that he therefore had a legal right to take such action. Whether or not his belief was correct, however, the court there recognized that his subsequent action was intentional, not "accidental." Likewise, in this case, Plaintiff intended to damage the railcars—it was cutting them up for use as scrap metal. This action may have occurred due to a mistake

---

[1]For a comprehensive listing of cases in other jurisdictions that have reached similar conclusions, *see Red Ball Leasing,* 915 F.2d at 309-310 n. 1. As that court notes, the decided weight of authority supports the position adopted by the Court in this case. Subsequent cases decided by the Seventh Circuit have adhered to the reasoning in *Red Ball. See GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1118 (7th Cir.1995).

[2]Plaintiff cites a number of cases in support of its position that involve situations with intentional acts that lead to unexpected results. *See e.g. Allstate Ins. Co. v. Justice,* 229 Ga.App. 137, 493 S.E.2d 532 (Ga.Ct.App.1997) (insured shot a bystander that he may not have been aware of); *So. Guaranty Ins. Co. v. Saxon,* 190 Ga.App. 652, 379 S.E.2d 577 (Ga.Ct.App.1989) (car engaged in a police chase hit a ditch and wrecked). In these cases, the Court of Appeals, construing insurance *exclusions,* found that "accidents" had indeed occurred. Those situations are quite different from the instant case. In the cases cited above, the immediate result of the intentional conduct was not intended. The insured in those cases did not intend to shoot a bystander or wreck into a ditch. By contrast, the immediate result of Plaintiff's conduct in this case, the possession and subsequent destruction of the railcars, was both intended and expected.

as to ownership, but there was nothing "accidental" about it. Consequently, Defendants had no duty to defend Plaintiff against Georgia Central's charges because coverage would not have applied to any of the claims.[3]

Having decided that Defendants' policies do not cover the Plaintiff's actions in this case, this Court will address the issues regarding any exclusions that might otherwise apply. Defendants' Motion for Summary Judgment is hereby GRANTED and Plaintiff's Motion for Summary Judgment is hereby DENIED.

So ORDERED, this 9th day of March, 1999.

---

[3]In light of this ruling, the Court finds that there is also no genuine issue of material fact concerning Plaintiff's claim of bad faith.