## 76565. AMERICAN SOUTHERN INSURANCE COMPANY
## v. GOLDEN et al.
### (373 SE2d 652)

McMurray, Presiding Judge.

American Southern Insurance Company ("American Southern") brought this declaratory judgment action against Don C. Golden ("Golden"), Allstate Insurance Company ("Allstate"), Charles S. Dyer ("Dyer") and United States Fidelity & Guaranty Company ("USF&G") to determine (1) whether it must provide insurance coverage to Golden, an agent of the Georgia Bureau of Investigation ("GBI"), pursuant to a commercial automobile liability insurance policy issued to employees of the State of Georgia and (2) whether Allstate must provide insurance coverage to Golden pursuant to a personal automobile liability policy issued to him.

The action stems from an automobile collision in which a 1980 Chevrolet El Camino, owned by the GBI and driven by Golden, collided with an automobile driven by Dyer. USF&G, Dyer's insurer, obtained an assignment of Dyer's property damage rights and brought suit against Golden. He claimed that American Southern was obligated to defend the suit brought by USF&G and to pay any judgment that might be entered against him.

Following discovery, American Southern, Golden, Allstate and USF&G moved for summary judgment. American Southern contended that it was not obligated to provide coverage to Golden and that Allstate was. Golden asserted that American Southern was bound to provide coverage. Allstate took the position that it did not have to provide coverage. And USF&G argued that both American Southern and Allstate were obligated to provide coverage.

The trial court ruled that American Southern was bound to provide coverage to Golden and that Allstate was not. Accordingly, American Southern's summary judgment motion was denied; Allstate's and Golden's summary judgment motions were granted; USF&G's summary judgment motion was granted in part and denied in part. *Held*:

A review of the record reveals the following facts: As a sworn narcotics agent of the GBI, Golden was to be on duty at all times unless he was taking annual or sick leave. In this regard, he was to maintain himself in such a way that he would be able to respond to any duty requirement.

Golden was assigned a GBI vehicle for his use as an undercover agent. He was permitted to drive the vehicle in connection with, or incidental to, his duties.

On February 25, 1986, Golden drove a GBI vehicle to his office where he transcribed tape recordings which were to be used in a trial. After lunch, Golden called another GBI agent and told him that he

was having trouble with an informant known to the other agent. The agents agreed that they would meet in the evening at Fitzgerald's Restaurant and Bar ("Fitzgerald's") to discuss the matter.

GBI agents (and other law enforcement personnel) frequented Fitzgerald's. They often worked cases from that location. Golden arrived at Fitzgerald's at approximately 6:00 p.m. and met the other agent as planned. They were joined there by more GBI agents.

During the course of the next several hours, Golden drank three alcoholic beverages. As an undercover agent of the GBI, Golden was permitted to consume alcoholic beverages so long as he was able to perform his duties.

Leaving Fitzgerald's, Golden headed home. Subsequently, the GBI vehicle which Golden was driving collided with a vehicle driven by Dyer.

Golden averred that he was not impaired by alcohol at the time of the collision and that he was available for duty until the collision occurred. It appeared to investigating officers, however, that Golden was intoxicated.

The insurance policy which American Southern issued to employees of the State of Georgia provided, in pertinent part: "This insurance does not apply: . . . (e) unless an insured is operating a vehicle in the performance of, in connection with, or incidental to his/her duties as a governmental employee."

The insurance policy which Allstate issued to Golden provided, in pertinent part, that Golden was insured for the use (with the permission of the owner) of a non-owned automobile. The policy made it clear, however, that "[t]his auto must not be available or furnished for the regular use of a person insured."

Contracts of insurance are to be construed strictly against the insurer and in favor of the insured when language contained therein is susceptible to two or more constructions. Where the insurer grants coverage to an insured, it must define any exclusions in its policy clearly and distinctly. See generally *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613); *American Cas. Co. v. Callaway*, 75 Ga. App. 799, 803 (44 SE2d 400). Construing the insurance policies with these principles in mind, we conclude that American Southern is obligated to provide coverage to Golden and that Allstate is not.

American Southern's policy expressed coverage for employees of the State so long as they operated vehicles in the performance of, in connection with, or incidental to their duties. Was Golden operating a vehicle in the performance of, in connection with, or incidental to, his duties as a State employee when he collided with the vehicle driven by Dyer?

On the day of the collision, Golden drove the vehicle to his office

for the purpose of transcribing tapes to be used in a trial. Then, he met with another GBI agent for the purpose of discussing an informant. The collision occurred as Golden was driving home from that meeting.

One could argue that Golden was not using the vehicle directly in the performance of his duties when the collision occurred. One cannot escape the conclusion, however, that Golden was using the vehicle in connection with, or incidental to, his duties when the collision occurred: As a sworn agent of the GBI, Golden was on duty at all times (unless he was taking annual or sick leave). He was furnished a GBI vehicle for use in connection with or incidental to his duties. And, at the time of the collision, Golden was using a GBI vehicle to drive home after a day's work. See *Jones v. Aldrich Co.*, 188 Ga. App. 581 (1) (373 SE2d 649) (1988).

Contending he was intoxicated at the time of the collision, American Southern argues Golden could not have been operating the vehicle in connection with, or incidental to, his duties as a State employee. In this regard, American Southern points to GBI Policy Statement #12 which reads: "All sworn members of the Bureau . . . will be considered available for duty at all times when not on sick or annual leave *and will maintain themselves in a position to be able to respond to any duty requirement*." (Emphasis supplied.) We cannot accept American Southern's contention.

Whether or not Golden was intoxicated when the collision occurred (the evidence is in conflict in this respect) is immaterial. At the time of the collision, Golden was not on annual leave or sick leave. He was, therefore, on duty. That Golden may not have maintained himself in a position to respond to a duty *requirement* does not detract from that fact. Thus, Golden was operating the vehicle in connection with, or incidental to, his duties when the collision occurred whether or not he was intoxicated.

Allstate's policy provides coverage for the use of a non-owned vehicle unless it is made "available or furnished for the regular use of a person insured." This provision extends coverage where an insured uses a non-owned vehicle with the permission of the owner on an occasional, incidental, casual or infrequent basis. *Mattox v. Cotton States Mut. Ins. Co.*, 156 Ga. App. 655, 657 (275 SE2d 667). It excludes coverage, however, where a non-owned vehicle is used regularly. Id.

In the case sub judice, Golden was furnished a GBI vehicle for his use as an undercover agent. Golden's use of the GBI vehicle was not occasional, incidental, casual or infrequent. He used it regularly (almost daily) to carry out his duties as a GBI agent. It follows that the GBI vehicle was not covered by the policy issued by Allstate. *Mattox v. Cotton States Mut. Ins. Co.*, 156 Ga. App. 655, 657, supra.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 23, 1988.

William D. Barwick, William R. Wildman, for appellant.
William A. Morrison, Samuel S. Olens, William P. Rowe III,
Royce F. Morris, George E. Duncan, Jr., for appellees.