A89A1895. SOUTHERN GUARANTY INSURANCE COMPANY v. NIXON.
(390 SE2d 638)

BANKE, Presiding Judge.

This litigation commenced with the filing of an action by K & E,

Ltd., which is not a party to this appeal, against the appellee, Clarence Nixon, d/b/a Nixon Construction Company, to recover for property damage allegedly sustained as the result of the latter's alleged negligence in performing certain work called for under a construction contract with K & E. Nixon filed a third-party complaint against the appellant herein, Southern Guaranty Insurance Company, alleging that K & E's claim was covered under a general liability insurance policy issued to him by the appellant. In a bifurcated trial, the same jury first returned a verdict for K & E against Nixon and then returned a verdict for Nixon against Southern Guaranty. Southern Guaranty appeals.

K & E had purchased an office building with a substantially incomplete interior with the intention of improving the interior space to suit prospective tenants. One such tenant, the Nicolon Corporation, leased 6,000 square feet of space in the building, following which K & E contracted with appellee Nixon for the completion of the space according to Nicolon's specifications. Nicolon moved into the space on March 1, 1984, at which time the construction was substantially completed except for a "punch list" of items to be performed by Nixon. The Nicolon suite contained a small kitchen area over which a hot water heater had been installed in the ceiling. It was established without dispute that this appliance was not operational at the time Nicolon moved in, that it was a "punch list" item which remained for Nixon's attention, and that K & E was withholding a portion of the contract price until such time as it was made operational. The work necessary to make the appliance functional was not attempted until July 22, 1984, almost five months after Nicolon had taken occupancy, at which time an electrician hired by Nixon replaced the heating element, resulting in the rupture of a pipe and approximately $47,400 in water damage. *Held*:

1. At the commencement of the trial, counsel for appellant Southern Guaranty moved the court to bifurcate the trial of the main claim from that of the third-party claim in order to remove the issue of insurance from the jury's consideration during the negligence phase of the trial. That motion was granted, with the understanding and agreement that the same jury would decide both phases of the trial. However, at the commencement of the second phase of the trial, appellant's counsel moved the court to empanel a second jury, arguing that the appellant would otherwise be denied a fair trial. The motion was denied, and the appellant contends on appeal that this ruling was prejudicial to it in that, having already rendered a verdict against Nixon, the jury was aware in deciding the coverage question that Nixon would be responsible for paying the damages should the insurance issue be decided against him.

While OCGA §§ 9-11-14 (a) and 9-11-42 (b) provide that a third-

party claim may be tried separately from the main claim, "[s]everance is largely a matter of discretion for the trial judge, and absent clear and manifest abuse of that discretion, it will not be interfered with on appeal." *Wheels & Brakes v. Capital Ford Truck Sales*, 167 Ga. App. 532 (1) (307 SE2d 13) (1983). See also *Sollek v. Laseter*, 124 Ga. App. 131 (183 SE2d 86) (1971). In this case, the trial court exercised its discretion in favor of the appellant by granting its initial motion to bifurcate the trial and thereby preventing the triers of fact from considering the existence of the insurance during the negligence phase of the trial. The trial court's refusal thereafter to empanel a second jury to try the insurance issue had the salutary effect of promoting judicial economy by avoiding the repetition of evidence. We find no abuse of discretion under the circumstances.

2. The appellant contends that the verdict against it on the coverage issue was contrary to a policy exclusion pertaining to "completed operations hazards." This exclusion applied, by the terms of the policy, to "property damage [which] occurs after . . . operations have been completed or abandoned and [which] occurs away from premises owned by or rented to the named insured." The policy further provided as follows: " 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times: (1) When all operations to be performed by or on behalf of the named insured under the contract have been completed, (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project. Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

In *Southern Guaranty Ins. Co. v. Jeffares*, 190 Ga. App. 449 (379 SE2d 167) (1989), we held that, notwithstanding the existence of an identical exclusion, an insured was entitled as a matter of law to coverage for damage caused by the faulty operation of a heating and air-conditioning system which had been approved by county inspectors three days earlier but which had not yet been charged and tested by the installer. In reaching this conclusion, we reasoned that since "remaining work was necessary for full performance of the contract requirements, . . . the operations to be performed by the insured under the contract at the job site were not completed when the [loss] occurred." Id. at 450. In the present case, there was evidence from which the jury could have concluded that the work which remained to

be performed on the hot water heater was installation work rather than repair work and that the appellee's "operations" with respect to it consequently had not yet been completed. Compare *Continental Ins. Co. v. Hawkins*, 170 Ga. App. 274 (316 SE2d 596) (1984) (sprinkler system operational when loss occurred); *Savannah Laundry &c. Co. v. Home Ins. Co.*, 189 Ga. App. 420 (376 SE2d 373) (1988) (repairs to steam cooker completed two years prior to loss); *Aetna Cas. &c. Co. v. Ammons*, 125 Ga. App. 74 (186 SE2d 495) (1971) (fall of light fixture occurred months after installation completed). Accordingly, we hold that the trial court did not err in denying the appellee's motions for directed verdict, for judgment notwithstanding the verdict, and for new trial on the general grounds.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 5, 1990.

*Parkerson & Shelfer, William S. Shelfer, Jr.*, for appellant.
*Chambers, Mabry, McClelland & Brooks, James T. Budd, Brunetti & Mazzetta, Alfred F. Brunetti*, for appellee.