## A91A1679. GLENS FALLS INSURANCE COMPANY v. DONMAC GOLF SHAPING COMPANY, INC.
(417 SE2d 197)

Andrews, Judge.

Donmac Golf Shaping Company, Inc. (Donmac) filed an action against Glens Falls Insurance Company seeking a declaratory judgment that the insurance company is obligated under a "commercial general liability" policy to provide it with a defense and coverage for liability for the alleged negligent placement and construction of a golf course project partly on federally protected "wetlands" without obtaining necessary permits to do so. Glens Falls appeals from the trial court's order granting Donmac's motion for summary judgment, denying the insurance company's motion for summary judgment, and ruling that the policy provides such coverage.

After Donmac had completed its construction of the golf course project, the developer became aware of possible incursion on federally protected wetlands, and was subsequently informed by the United States Corps of Engineers that substantial areas of the project were built on wetlands without necessary permits in violation of federal law. The United States sued the developer for violation of various federal statutes protecting the wetlands. A consent decree was entered in that case whereby the developer was required to undertake restoration work to some of the affected wetlands at the site of the project, and was further required, as off-site mitigation, to create other wetland areas away from the site of the project. The developer sued the engineering firm responsible for engineering work on the project, the architect who designed the project, and Donmac which was hired to construct the project.

The allegations of the complaint filed against Donmac provide the basis for determining whether liability exists under the terms of the policy. *Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 85-86 (259 SE2d 39) (1979). The complaint alleges that Donmac, as the contractor hired to construct the project, negligently failed to exercise the ordinary care required of contractors under like circumstances by constructing the project in the wetland areas without obtaining the

necessary permits and in violation of federal law.[1] As a consequence, the complaint alleges that the developer has suffered out-of-pocket expenses to mitigate the illegal wetland development in that it has been required: to undertake restoration and preservation of certain areas within the project; to eliminate certain proposed residential lots in the project, and to purchase additional land outside the project for similar preservation purposes. The developer also alleges that it has suffered a substantial reduction in the fair market value of the project, and that delay to the project caused by the illegal development has resulted in increased debt service carrying costs on the project. For these damages the developer seeks a monetary award jointly and severally against each defendant of not less than $5,000,000.

1. Glens Falls argues that the policy provides no coverage because Donmac intended to build the project where it stands. The commercial general liability (CGL) policy at issue provides coverage for "property damage" caused by an "occurrence." An occurrence is defined` as an "accident," while the policy otherwise excludes coverage for property damage "expected or intended from the standpoint of the insured." This argument is without merit. There is no evidence that the resulting damage alleged by the developer was intended or expected by Donmac. The issue is not whether Donmac intended to build the project in its present location according to the project specifications, but whether Donmac had the specific intent called for by the policy to cause the alleged damages. *Southern Guar. Ins. Co. of Ga. v. Saxon*, 190 Ga. App. 652, 653 (379 SE2d 577) (1989). Donmac's sole stockholder testified by deposition that the company had no knowledge prior to or during construction that the project was laid out partly on wetlands. Although he had some knowledge about what constituted wetlands from a previous construction project, he testified that the present project did not contain the type of land that he had previously understood to be wetlands. " '[T]he mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent.' " *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (291 SE2d 410) (1982) (quoting Prosser, The Law of Torts). The deposition testimony of Donmac's representative being the only evidence of the insured's subjective intent, we find the exclusion does not apply. *Southern Guar.*, supra at 654.

2. Glens Falls also asserts that no coverage is provided because the complaint alleges that Donmac's negligence amounted to a failure to comply with the standards of ordinary care for similar contractors under the circumstances. Without pointing to any provision of the

---

[1] The complaint also contained a breach of contract claim, but the parties agree that there is no coverage under the policy for the breach of contract claim.

policy, the insurance company asserts that this is a professional negligence action which is not covered by the policy. We find no basis for denying coverage just because expert testimony may be utilized to prove allegations that the claimed damages were caused by Donmac's negligent deviation from a general standard of care for contractors.

3. Property damage is defined in the policy as "[p]hysical injury to tangible property including all resulting loss of use of that property; or [l]oss of use of tangible property that is not physically injured." Glens Falls first claims that the complaint against Donmac makes no allegation of property damage. Clearly, the complaint alleges that the negligent construction of the project on wetlands caused losses due to physical damage and loss of use to the project. See *Haley v. Ga. Farm Bureau Mut. Ins. Co.*, 166 Ga. App. 596, 598-599 (305 SE2d 160) (1983); *Southeastern Color Lithographers v. Graphic Arts. Mut. Ins. Co.*, 164 Ga. App. 70 (296 SE2d 378) (1982). Second, the insurance company claims that coverage was excluded under the following provisions of the policy which exclude coverage for property damage to: "j. (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The policy provides that the exclusion in paragraph (6) does not apply to property damage included in the "products-completed operations hazard." Under the policy definition, the "products-completed operations hazard" includes property damage occurring away from premises owned or rented by Donmac arising out of work completed by Donmac. Although Donmac did not own or lease the project, the alleged illegal construction of the project on wetlands obviously occurred contemporaneously with the work being performed on the project. Since the work was not completed when the damage was incurred, the "products-completed operations hazard" exception to the exclusion in paragraph (6) does not apply. See *Southern Guar. Ins. Co. v. Nixon*, 194 Ga. App. 398, 400 (390 SE2d 638) (1990).

Glens Falls also claims that the policy excludes coverage for property damage under paragraphs m. and n. Paragraph m. excludes coverage for " 'property damage' to 'impaired property' or property that has not been physically injured arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in . . . 'your work.' " Under paragraph n. the policy excludes coverage for "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property'; if such product, work or property is withdrawn or

recalled from the market or from use by any person or organization because of a known defect, deficiency, inadequacy or dangerous condition in it." Under the policy definition " 'Impaired property' means tangible property other than 'your product' or 'your work' that cannot be used or is less useful because: a. It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous;"

The exclusions from coverage for property damage contained in paragraphs j., m. and n. and other similar exclusions in the CGL policy are generally referred to as "business risk" exclusions, and are designed to exclude coverage for defective workmanship by the insured causing damage to the project itself. *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220, 223 (355 SE2d 130) (1987); *Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*, 187 Ga. App. 670 (371 SE2d 144) (1988). The principle behind such exclusions is based on the distinction made between two kinds of risk incurred by a contractor such as Donmac. The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the CGL policy, and the "business risk" exclusions in the policy make this clear. *Gary L. Shaw*, supra at 224. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which CGL coverage is contemplated. *Weedo v. Stone-E-Brick, Inc.*, 405 A2d 788, 791 (N. J. 1979). "While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting. . . . The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage [applicable under the CGL policy] is for tort liability for . . . [injury to persons and damage to other property] and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained. . . .'" (Punctuation and citation omitted.) *Weedo*,

supra at 791.

Here, the policy exclusions applicable to property damage at paragraphs j., m. and n. exclude coverage for damage to or impairment of the project as a result of defective work done by Donmac. See *Houston Bldg. Svc. v. American Gen. Fire &c. Co.*, 799 SW2d 308 (Tex. Ct. App. 1990) (construing the same exclusions contained in paragraph j. of the present policy). The complaint by the developer is not that Donmac failed to construct the project in a workmanlike manner according to the specifications provided to it, but that it negligently built part of the project on federally protected wetlands. Under the allegations of the developer's complaint, the failure of Donmac to identify the wetlands and comply with the governing federal regulations in its construction of the project is set forth as both a breach of contract claim and a tort claim. A contractor who undertakes a construction project is required by law to exercise ordinary care not to endanger the persons or property of others. This legal duty is imposed on the contractor by the express or implied contractual relationship created when the contractor undertakes the project. The breach of this legal duty, imposed by contract, but existing in law apart from the contractual obligation, may constitute both a tort arising from the contract, and a breach of the contractual relationship itself. *E. & M. Constr. Co. v. Bob*, 115 Ga. App. 127 (153 SE2d 641) (1967). "[I]n such [tort] cases the injury to the plaintiff has been an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." (Punctuation and citations omitted.) *Tate v. Aetna Cas. &c. Co.*, 149 Ga. App. 123, 125 (253 SE2d 775) (1979).

The damages alleged and the recovery sought by the developer as a result of alleged acts and omissions by Donmac far exceed the full contract price of approximately 1.2 million dollars paid to Donmac for its completed construction work. The developer's suit does not attempt to regain its original contracted-for benefit by seeking reconstruction of the project with proper consideration given to the wetlands and the applicable federal regulations. The suit proceeds from the premise that the project has been built, the damage done, and the developer is entitled to reimbursement for damages incurred as a result of the alleged negligence. In seeking recovery for expenses of restoration and preservation of damaged wetlands at the project site, purchase and restoration of off-site wetland areas, elimination of certain encroaching areas of the project, and the resulting diminution in the fair market value of the property, the developer seeks recovery for damages over and above the scope of the benefits it contracted for with Donmac. Compare *Reliance Ins. Co. v. Povia-Ballantine Corp.*, 738 FSupp. 523, 526-527 (S. D. Ga. 1990) (discussing *Gary L. Shaw*, supra, and *Elrod's*, supra, and finding no coverage under CGL policy

where all the claimed damages related directly to repairing or replacing the insured's defective work); *Elrod's*, supra at 671 (no coverage under the CGL policy because damages sought arose exclusively from insured's faulty workmanship). For example, in *Reliance Ins. Co.* the damage sought was return of the purchase price and related expenses on a condominium defectively constructed by the insured. In *Elrod's* the insured manufactured and sold defective fabric to a business which sued the insured for damages, including lost profits, after its customers rejected the fabric. In *Gary L. Shaw* the contractor, who was insured under a CGL policy, was sued for correction of defects in the insured's construction of a house. In the three previous cases, in which no CGL coverage was found, the damages sought against the insureds were all directly related to correcting or repairing their deficient work or product. In this sense the damages were calculated to make good the contractual promises made by the insureds to the plaintiffs and were within the scope of those contractual expectations. By contrast, the damages sought by the developer against Donmac are not directly related to the cost of repairing and replacing deficiencies in Donmac's work on the project — and therefore excluded from the CGL coverage as business risks — but rather are claims beyond the scope of the contractual expectations for additional tort damages caused by the alleged deficiencies in Donmac's performance. " 'Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' " *Alley v. Great Am. Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981). Viewing the damages sought by the developer in this light, we find the CGL policy exclusions at issue are "business risk" exclusions not applicable to the type of tort damages sought.

Accordingly, the trial court was correct in granting summary judgment in favor of Donmac, denying Glens Falls' motion for summary judgment, and determining that the CGL coverage applies.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 12, 1992 —
RECONSIDERATION DENIED MARCH 24, 1992 — ▮▮▮▮▮▮▮

*Alexander & Vann, William C. Sanders*, for appellant.
*Floyd B. Moon, Young, Clyatt, Turner, Thagard & Hoffman, William A. Turner, Jr.*, for appellee.