A97A0341. CONTROLLED BLASTING, INC. v. RANGER INSURANCE COMPANY.
(484 SE2d 47)

BIRDSONG, Presiding Judge.

Appellant Controlled Blasting, Inc. (CBI) appeals from the order of the superior court granting appellee/insurer Ranger Insurance Company's motion for summary judgment and denying the summary judgment motion of appellant. Appellant contends that the trial court erred in holding that coverage was specifically excluded under Section I, Coverage A, Section 2, Subparagraph m of the insured appellant's comprehensive general liability policy.

CBI was insured by Ranger under two comprehensive general liability policies in effect from April 1, 1992 to April 1, 1993 and from April 1, 1993 to April 1, 1994, respectively. CBI filed suit in superior court seeking a declaratory judgment that these policies provided coverage and indemnification against the claims of Don Moorhead Construction, Inc. as to a counterclaim filed by Moorhead in a separate action brought by CBI in the state court.

In early 1993, Moorhead subcontracted with CBI to remove rock lying in a sewer bed at the project site. CBI attempted to remove the rock using a product known as ANFO, an ammonium nitrate-based compound which after being inserted into a container was called a Samson Pak. At all times relevant to this lawsuit, the Samson Pak was manufactured and used by CBI. The Samson Pak was designed to allow ANFO and other explosives to be used in a "wet hole"; that

is, to allow the use of explosives under conditions otherwise too wet for their effective use.

In the state court action, CBI sought recovery from Moorhead of certain sums which it contends were due and owing for drilling and blasting services performed for Moorhead on a certain sewer relief project. Moorhead counterclaimed against CBI asserting a breach of subcontract causing Moorhead to resequence and accelerate its work and compelling it to take certain other ameliorable actions. Moorhead specifically asserts that the ANFO used by CBI did not break any of the rock where it was used. CBI apparently contends that if its blasts did not break the rock, it would go back and reshoot; however, it could not continue on the project without the assurance that it would be paid.

During discovery in the state court action, Mr. Moorhead testified that the "bulk" of its complaint against CBI was that the ANFO/Samson Pak product did not work under the conditions encountered at the project site. CBI here asserts that, during discovery, it first learned that Moorhead's claims were based primarily on the contention that CBI's product did not perform as it should have and failed to break rock as necessary on the project site. Concluding that Moorhead's counterclaim was primarily based on an alleged product failure, and having products-completed operations hazard insurance coverage, CBI notified its insurer, Ranger. Ranger declined to defend CBI as to the counterclaim and denied that the incident was covered under the terms of the general liability policies in view of its policy exclusion regarding unintended blasting.

The trial court granted appellee's motion for summary judgment and denied appellant's motion after finding that "coverage is specifically excluded under Section I, Coverage A, Section 2, Subparagraph m of the general liability policy at issue in this matter." *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. Section I, Coverage A, Section 2, Subparagraph m of the applicable policy provides: This insurance does not apply to: "m. 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

An insurance policy is governed by the ordinary rules of contract construction. *Southern Guaranty Ins. Co. &c. v. Goddard*, 259 Ga. 257, 259 (379 SE2d 778); see generally *Park 'N Go &c. v. U. S. Fidelity*

&c. Co., 266 Ga. 787, 791 (471 SE2d 500); *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (three-step process of contract construction); *Duffett v. E. & W. Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858); *American Southern Ins. Co. v. Golden*, 188 Ga. App. 585, 586 (373 SE2d 652). We will examine the trial record and resolve appellant's enumeration of error in light of the above legal principles.

"The policy involved in this case is a standard comprehensive general liability policy used extensively throughout the country." *Elrod's Custom Drapery &c. v. Cincinnati Ins. Co.*, 187 Ga. App. 670 (371 SE2d 144). The " ' "purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product." ' " (Citations and punctuation omitted.) Id.

Moreover, the counterclaim, as amended, did not place appellee on reasonable notice, as required by notice pleading requirements of the Civil Practice Act (see generally *Wade v. Polytech Indus.*, 202 Ga. App. 18, 21 (2) (413 SE2d 468)), of any claim for damages grounded in tort; rather, the counterclaim provided reasonable notice only of an averred breach of contract claim based on faulty workmanship. "The allegations of the complaint filed against [appellee] provide the basis for determining whether liability exists under the terms of the policy." *Glens Falls Ins. Co. v. Donmac Golf &c. Co.*, 203 Ga. App. 508 (417 SE2d 197), citing *Great American Ins. Co. v. McKemie*, 244 Ga. 84, 85-86 (259 SE2d 39). "[T]he correctness of an insurer's decision to defend or not cannot be determined by 'later-revealed facts' of which the insurer has no knowledge or notice." Id. at 85.

In *Glens Falls*, the policy at issue contained certain business risk exclusions — one of which was substantially similar to the exclusion contained in Section I, Coverage A, Section 2, Subparagraph m of the general liability policy in this case. Although *Glens Falls*, supra, is distinguishable from this case and not controlling as to its disposition, certain principles discussed therein are relevant to our holding. Specifically, the contractor bears the business risk "to replace or repair defective work to make the . . . project conform to the agreed contractual requirements. This type of risk is not covered by the [comprehensive general liability] policy, and the 'business risk' exclusions in the policy make this clear." Id. at 511. "The coverage (applicable under the [comprehensive general liability] policy) is for tort liability for . . . (injury to persons and damage to *other* property) and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." (Citations omitted; emphasis supplied.) Id.

The counterclaim, as amended, gave reasonable notice only of a claim grounded on faulty workmanship. "Because all the damages

*sought in this action . . .* arise exclusively from faulty workmanship and not from some insurable event as defined in the policy, we find that appellee properly denied coverage, and the trial court properly granted appellee's motion for summary judgment." *Elrod's Custom Drapery*, supra at 671. It is well established that a grant of summary judgment must be affirmed if it is right for any reason. *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 423 (3) (405 SE2d 61).

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED MARCH 11, 1997.

*Greer, Klosik & Daugherty, Jeffrey F. Leasendale*, for appellant.
*Philip M. Casto*, for appellee.