BLUE, Acting Chief Judge.
In these consolidated appeals, we are required to decide whether the trial court erred when determining, by summary judgments, coverage questions between a contractor and the issuers of primary and excess comprehensive general liability insurance policies. Because we conclude there was no coverage afforded under these policies for the claims asserted against the contractor, we affirm the trial court’s ruling in favor of the excess carrier and reverse the summary judgment which held that coverage existed under the primary insurance policy.
These appeals arise from the continuing litigation spawned by the ill-fated Pinellas County water distribution pipeline. The Hardaway Company, f/b/o Wright Contracting Company, individually, and as a joint venture known as Wright-Howard-Smith, was the prime contractor for the pipeline. Hardaway purchased a comprehensive general liability policy issued by The Fidelity and Casualty Company of New York, effective from December 1, 1973, to July 1, 1975, and an umbrella or excess coverage policy from United States Fire Insurance Company for the same effective dates. Both Fidelity and U.S. Fire issued endorsements for completed operations of their respective interests for an additional year. Insurance coverage was maintained during subsequent years, but those policies were not involved in this litigation.
The pipeline construction was completed in 1975, and in 1976, the water distribution system was sold to the West Coast Regional Water Supply Authority. In 1987, the pipeline ruptured and the Authority filed suit against Hardaway and others involved in the construction of the pipeline. Hardaway demanded that both Fidelity and U.S. Fire provide coverage for and a defense to the claims of the Authority. Both insurance companies declined to defend. Both also asserted that the claims were not covered under the relevant policies. Hardaway defended itself and eventually settled the claims. It then sued both Fidelity and U.S. Fire for damages in the amount of the settlement, as well as the costs and attorney’s fees incurred in defending against the Authority’s lawsuit.
All parties filed motions for summary judgment, asserting that there were no questions of fact and that the existence of coverage under the policies could be determined as a matter of law. Fidelity’s primary coverage and U.S. Fire’s excess coverage insured for the same risks, with only minor differences in policy language that do not affect the coverage issue here. The trial court had previously ruled that Georgia law was applicable in determining the “nature, validity and interpretation of the insurance contract” because the policies were delivered in Georgia. The parties do not challenge that determination. Florida law applies to all other matters.
The trial court heard the summary judgment motions concerning the Fidelity and U.S. Fire policies at different times, and ruled that the U.S. Fire policy provided no coverage and no duty to defend, while finding that the Fidelity policy provided coverage and a duty to defend. It is these rulings which are the subject of this review. The dispositive issue is whether there was an occurrence, as defined by the policies, that triggered either insurer’s defense and indemnification obligations.
Hardaway argues that the installation of the pipeline in 1975 was the occurrence which gave rise to the damage claim against it, although the explosion of the pipe did not occur until 1987. Both insurance companies argue there is no coverage and no duty to defend for two reasons. First, they contend that the pipeline’s failure occurred more than ten years after the period encompassed by the liability policies. Second, the insurance companies contend that the damages were expressly excluded under the work product and business risk exclusions contained in both policies of insurance. Hardaway also contends that the Authority’s complaint al *590 leged damages beyond those excluded by the terms of the insurance policies, specifically, a trespass claim.
There is case support for Hardaway’s theory that the installation of the pipeline during the policy period was an occurrence which triggers coverage. See Eljer Mfg., Inc. v. Liberty Mut. Ins. Co., 972 F.2d 805 (7th Cir.1992). The insurance companies argue that this decision should be controlled by Southern Guaranty Insurance Corp. v. Zantop International Airlines, Inc., 767 F.2d 795 (11th Cir.1985). We agree that Zantop, decided pursuant to Georgia law, contains the standard applicable to our decision. Applying Zantop, we hold that the explosion of the pipe in 1987 was the occurrence which would trigger coverage, but only if the pipe exploded during the policy period. Because the pipeline failed after the policy period, there was not an occurrence under the policies.
Further, after review of the Authority’s third amended complaint and the insurance policies at issue, we hold that, even if there had been an occurrence that would trigger coverage, the alleged damages are excepted from coverage by the work product and business risk exclusions. These exclusions bar coverage for the cost of repair and replacement of the insured’s faulty or defective workmanship or for other problems associated with the insured’s business risk. See Zantop; LaMarche v. Shelby Mut. Ins. Co., 390 So.2d 325 (Fla.1980); Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (N.J. 1979). Liability insurance policies, such as the policies involved here, are not performance bonds. See LaMarche.
A closer question is presented in Hardaway’s contention that the Authority stated a claim for trespass, covered under the personal injury provisions of the policies, with its allegations that the pipeline was laid outside the easement. Hardaway’s position might have validity if this ease involved a claim by a third-party landowner seeking damages from the Authority, but that is not the case. The Authority’s possible, not actual, exposure to a trespass claim by injured landowners is not a physical injury to tangible property and therefore, not covered under the liability policies. See Glens Falls Ins. Co. v. Donmac Golf Shaping Co., Inc., 203 Ga.App. 508, 417 S.E.2d 197 (Ga.App.1992). At most, the Authority alleges a potential exposure to economic damages, a claim excluded by the business risk exclusions in the policies.
We have also considered Hardaway’s assertion that Fidelity and U.S. Fire had a duty to defend against the claims of the Authority. We recognize that the duty to defend is broader than coverage and may even arise when there is ultimately a determination of no coverage for claims under the policies of insurance. See Penn-America Ins. Co. v. Disabled Am. Veterans Inc., 224 Ga.App. 557, 481 S.E.2d 850, 851 (Ga.App.1997); Baron Oil Co. v. Nationwide Mut. Fire Ins., 470 So.2d 810, 813-14 (Fla. 1st DCA 1985). This is a question of law which is determined by an examination of the claims asserted and the provisions of the policies of insurance. We have done that analysis and have reached the conclusion that no duty to defend arose under any of the insurance contracts because the Authority’s allegations do not allege a covered occurrence under the policies. See Batson-Cook Co. v. Aetna Ins. Co., 200 Ga.App. 571, 409 S.E.2d 41 (Ga.App.1991). Again, the pipeline’s failure occurred outside of the time period covered by the liability policies involved.
Accordingly, we affirm the summary judgment which held that U.S. Fire had no coverage or duty to defend the claims against Hardaway, and reverse the summary judgment which held that Fidelity did have coverage and a duty to defend the claims against Hardaway. In light of these rulings, we also reverse the trial court’s ruling that Fidelity was liable for prejudgment interest and attorney’s fees and costs in the underlying action.
Affirmed in part, reversed in part and remanded.
QUINCE and NORTHCUTT, JJ., concur.