[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14247

_____

D.C. Docket No. 1:14-cv-02977-ELR

G.M. SIGN, INC.,
as Judgment Creditor; and assignee of
MFG.com,

Plaintiff - Counter Defendant -
Appellant,

versus

ST. PAUL FIRE & MARINE INS.CO.,

Defendant - Counter Claimant -
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 12, 2019)

Before MARTIN, JILL PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal is the second in a dispute between an insurer and its insured's judgment creditor and assignee concerning the insured's right to indemnification under its insurance policy.  G.M. Sign, Inc. brought this action seeking a declaratory judgment that St. Paul Fire & Marine Insurance Company was required to indemnify its insured, MFG.com, for liability MFG incurred for faxing advertisements to recipients it mistakenly thought had consented to receipt.  The district court concluded that St. Paul had no duty to indemnify MFG because, under Georgia law, no accident occurred when MFG sent the junk faxes with the mistaken belief that the recipients had agreed to receive them.  Accordingly, the district court granted St. Paul summary judgment.

In ruling, the district court relied on our decision in *Mindis Metals, Inc. v. Transportation Insurance Co.*, which held that under Georgia law intentional conduct premised on erroneous information is not an "accident" for general liability insurance purposes.  209 F.3d 1296, 1297 (11th Cir. 2000).  On appeal, G.M. Sign argues that the district court erred in granting St. Paul summary judgment because under Georgia law the term "accident" covers injuries resulting from negligent acts.  We conclude that G.M. Sign's argument is foreclosed by *Mindis Metals*.  We therefore affirm the district court.

2

## I.    BACKGROUND

Because we write for the parties, we recite only the facts necessary to understand our ruling.  For a fuller account, see our previous opinion, *G.M. Sign, Inc. v. St. Paul Fire & Marine Insurance Co.*, 677 F. App'x 639 (11th Cir. 2016) (unpublished).

### A.    Facts

MFG began a fax advertising program by purchasing lists of people who MFG believed had consented to receive marketing materials by fax.  MFG's belief that the recipients had agreed to receive the faxes turned out to be mistaken.  Between September 18, 2005, and November 15, 2008, MFG sent approximately 494,212 fax advertisements to the people included on the purchased lists.  At the time it sent the faxes, MFG thought that its advertising program complied with all applicable laws.

MFG purchased from St. Paul a series of commercial general liability insurance policies from 2003 to 2009 (the "Policies").  The Policies covered "property damage" caused by "an event."  Doc. 51-21 at 64.[1]  They defined property damage as "physical damage to tangible property of others, including all resulting use of that property" or "loss of use of tangible property of others that isn't physically damaged."  *Id.*  The Policies defined an "event" as "an accident,

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

3

including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 65.  The Policies did not define the term "accident."

## B.    Procedural History

G.M. Sign brought a putative class action against MFG in Illinois state court, alleging among other things violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The complaint alleged that MFG had on several occasions sent fax advertisements to G.M. Sign and the other members of the putative class, without the recipients' permission.  After MFG notified St. Paul of the lawsuit and demanded a defense and coverage, St. Paul notified MFG that it was denying MFG's demands.  MFG removed G.M. Sign's action to federal court and moved to dismiss.  After the district court denied the motion, the parties jointly stipulated to dismissal without prejudice of all the claims, which the court accepted.  G.M. Sign then brought another action in state court, asserting the same claims against MFG on behalf of the same class of plaintiffs.

MFG and G.M. Sign eventually settled, agreeing that MFG was liable to the class in the total amount of $22,536,500.  As part of the settlement agreement, MFG agreed to pay $460,000 of this amount.  The parties further stipulated that the remaining amount MFG owed the class could only be satisfied from the Policies.  MFG assigned to the class its claims against and rights to payment from St. Paul under the Policies.

4

G.M. Sign, on behalf of itself and the other class members, brought this action in Georgia state court, requesting a declaratory judgment that the Policies covered the settled claims. St. Paul removed the case to federal district court and filed a counterclaim requesting a declaratory judgment that it owed no coverage. The parties filed cross-motions for summary judgment; the district court concluded that MFG had failed to notify St. Paul of G.M. Sign's second suit, which was a condition precedent for coverage. The district court thus granted St. Paul's summary judgment motion, denied G.M. Sign's motion, and entered judgment in St. Paul's favor. G.M. Sign appealed, and we vacated the district court's order granting St. Paul summary judgment on the notice issue and remanded for further consideration.

On remand, the parties again filed cross-motions for summary judgment. The district court again granted summary judgment to St. Paul, this time on the ground that the Policies did not cover the property damage MFG caused. Specifically, the district court ruled that under *Mindis Metals*, "the intentional delivery of fax advertisements does not qualify as an 'accident' under Georgia law, even if the sender erroneously believed that it had consent to send the fax advertisements." Doc. 81 at 12, 18.

G.M. Sign again appeals.

5

## II.    STANDARD OF REVIEW

"We review an order granting summary judgment de novo and apply the same legal standards that governed the district court's decision." *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  To prevail on summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

In this appeal, G.M. Sign argues that St. Paul is required to indemnify MFG for its TCPA liability because the term "accident" under Georgia law covers injuries resulting from negligence.  According to G.M. Sign, MFG sent the faxes negligently because it never intended to send any faxes without the recipients' consent.  Thus, according to G.M. Sign, MFG had no intent to injure the recipients. St. Paul responds that no accident occurred when MFG sent the faxes because by sending the faxes, MFG intended to cause the relevant property damage:  the use of the recipients' fax machines and the depletion of their ink and paper.  According to St. Paul, MFG's mistaken belief that the recipients agreed to receive the faxes is immaterial.  We agree with St. Paul.  G.M. Sign also argues that St. Paul is estopped from contesting coverage because it wrongfully breached its duty to defend, but we reject this argument as well.

6

**A.    No Accident Occurred Because in Sending the Faxes MFG Engaged in Intentional Conduct Premised on Erroneous Information.**

Under Georgia law, "an insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 590 (Ga. 2013) (alteration adopted) (internal quotation marks omitted).[2]  This appeal presents a question of contract interpretation:  whether, under the Policies, an "accident" occurred when MFG intentionally sent faxes that caused the recipients' fax machines to suffer property damage[3] given that MFG mistakenly thought the recipients had consented to receive the faxes.  The Policies provide no definition for the term "accident."  But when an insurance policy fails to define a term or otherwise indicate that the term "is used in an unusual sense, [Georgia courts] attribute to that term its usual and common meaning." *Id.* at 590-91.  The usual and common meaning of "accident," according to the Supreme Court of Georgia, is "an unexpected happening without intention or design." *Id.* at 591 (internal

---

[2] As we explained in our earlier opinion, "[t]he insurance policies at issue here were issued in Georgia." *G.M. Sign, Inc.*, 677 F. App'x at 642.  The parties agree that Georgia law governs whether the Policies provided coverage for MFG's TCPA liability.

[3] Neither party disputes that property damage occurred when MFG sent the faxes at issue. Courts have concluded that the use of a fax machine to print a fax, including the depletion of the machine's ink and paper, constitutes property damage. *See, e.g.*, *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005) (agreeing with the Seventh Circuit in *American States Insurance Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939, 943 (7th Cir. 2004)).

quotation marks omitted).  Prior published precedent of this Court requires us to conclude that no accident occurred when MFG sent the faxes at issue here.

Applying Georgia law, in *Mindis Metals*, we considered whether "intentional conduct premised on erroneous information" constitutes an accident. 209 F.3d at 1297.  We acknowledged that other jurisdictions were divided on the issue, but we nonetheless concluded that under Georgia law such conduct was not an accident.  *Id.*  We adopted the reasoning of the district court opinion in *Macon Iron & Paper Stock Co. v. Transcontinental Insurance Co.*, 93 F. Supp. 2d 1370 (M.D. Ga. 1999), and attached that decision to our opinion.  *Mindis Metals*, 209 F.3d at 1297-1302.

In *Macon Iron*, the district court addressed whether negligent conduct constituted an accident under Georgia law.  There, a scrap metal recycler purchased railcars from the general manager of a railroad.  *Mindis Metals*, 209 F.3d at 1297.  The recycler paid the general manager personally for the railcars. *Id.*  When the railroad learned of these transactions, it reported the general manager to the police and sued the recycler for the unauthorized transactions.  *Id.* at 1298. The railroad and the recycler settled the railroad's claims.  *Id.*  Although the recycler had two insurance policies that covered "property damage" caused by an "accident," the insurance companies refused to defend the recycler or indemnify it for the settlement amount.  *Id.* at 1298-99.  The recycler then sued the insurers,

8

claiming the policies provided coverage. *Id.* at 1298. The district court disagreed based on its conclusion that no accident occurred when the recycler purchased the railcars and scrapped them. *Id.* at 1301. Even if the recycler mistakenly believed that the general manager personally owned the railcars, the court concluded, no accident occurred because the recycler intended to damage the railcars by "cutting them up for use as scrap metal." *Id.*

*Macon Iron* relied on two decisions from the Court of Appeals of Georgia addressing whether an accident occurred for general liability insurance purposes, *Glens Falls Insurance Co. v. Donmac Golf Shaping Co.*, 417 S.E.2d 197 (Ga. Ct. App. 1992), and *Georgia Farm Bureau Mutual Insurance Co. v. Meriwether*, 312 S.E.2d 823 (Ga. Ct. App. 1983). In *Glens Falls*, a construction company built a golf course on a site without realizing that much of the new course sat on federally protected wetlands. *Glens Falls*, 417 S.E.2d at 198. When the company was sued, it filed an action against its insurer seeking a declaratory judgment that the insurer was required to provide a defense and coverage under a commercial general liability insurance policy. *Id.* The insurance company denied coverage under an exclusion that applied to property damage "expected or intended from the standpoint of the insured." *Id.* at 198-99. The Court of Appeals ruled that the exclusion was inapplicable because the developer did not intend to build on federal wetlands. *Id.* at 199. The court reasoned that in determining whether the

construction of the course on wetlands was expected or intended, "[t]he issue is not whether [the construction company] intended to build the project in its present location . . . but whether [the company] had the specific intent called for by the policy to cause the alleged damages." *Id.*

In *Meriwether*, a property owner was sued after he placed a gate across a road that he believed to be on his property but may have been on public property. *Meriwether*, 312 S.E.2d at 823-24. The property owner had an insurance policy that covered property damage caused by an occurrence, which the policy defined as "an accident which results in . . . property damage neither expected nor intended from the standpoint of the insured." *Id.* (alteration adopted) (emphasis omitted). After the property owner demanded that his insurer provide him a defense to the plaintiffs' action, the property owner's insurer sought a judgment declaring that it had no duty to defend. *Id.* at 823. The Court of Appeals concluded that the insurer had no duty to defend because no "accident" occurred when the property owner closed the gate. *Id.* at 824. The court reasoned that the property owner's conduct could not be accidental because he "intentionally blocked the disputed way." *Id.*

Acknowledging its duty to avoid interpreting decisions of the Georgia appellate court as conflicting, the district court in *Macon Iron* followed *Meriwether* and distinguished *Glens Falls*, the later-decided case, on the ground that *Glens Falls*, unlike *Meriwether*, interpreted an exclusion to insurance coverage, which

10

Georgia law requires courts to construe narrowly. *Mindis Metals*, 209 F.3d at 1300 ("*Glens Falls* can be read without contradicting [*Meriwether*]. In contrast to *Meriwether*, the court in *Glens Falls* was interpreting an *exclusion* to insurance coverage. . . . [E]xclusions to insuring agreements require a narrow construction." (internal quotation marks omitted)). *Macon Iron* read *Meriwether* as standing for the proposition that under Georgia law "an 'accident' does not include damage to persons or property when that damage is intentionally inflicted, even where that intentional conduct is caused by erroneous information." *Id.* Because *Mindis Metals* agreed with *Macon Iron* and adopted its reasoning, we are bound here by this statement of Georgia law unless state law has since changed or been clarified. *See World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009), *certified question answered*, 695 S.E.2d 6 (Ga. 2010).

Applying the rule we adopted in *Mindis Metals* to the facts of this case yields the conclusion that under Georgia law, no accident occurred when MFG sent faxes with the mistaken belief that the recipients had consented to receive them. MFG intended to send the faxes and thus intended to cause the resulting property damage, the use of the fax machines and the depletion of the machines' ink and paper. The fact that MFG mistakenly thought the recipients had consented to receive the faxes is insufficient under *Mindis Metals* to render the property damage an accident under Georgia law. Therefore, the Policies' property damage

11

provisions provided no coverage for the TCPA liability arising from MFG's conduct.  The district court correctly granted St. Paul summary judgment.

G.M. Sign contends that *Mindis Metals* no longer controls because a subsequent decision of the Supreme Court of Georgia clarified state law.  *See Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E.2d 369 (Ga. 2011).  As earlier stated, our prior precedent rule requires us to follow *Mindis Metals* unless state law has since been "change[d] or . . . clarified in a way that is inconsistent with the state law premise" of *Mindis Metals*.  *World Harvest Church*, 586 F.3d at 957 (internal quotation marks omitted).  Thus, we would be free to accept G.M. Sign's invitation to reinterpret Georgia law in light of *Hathaway* if that case changed or clarified the state law premise of *Mindis Metals*.  But in our view it did neither.

In *Hathaway*, a general contractor sued its plumbing subcontractor after the plumber's work damaged surrounding property.  *Hathaway*, 707 S.E.2d at 370.  After entry of a default judgment against the subcontractor, the general contractor filed an action against the subcontractor's insurer.  *Id.*  The general contractor sought coverage under the subcontractor's commercial general liability insurance policy, which provided coverage for property damage resulting from an "occurrence," defined as an "accident."  *Id.*  The Supreme Court of Georgia held that the property damage resulting from the negligent work was an occurrence

under the policy. *Id.* at 372. It reasoned that "[a] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Id.* (internal quotation marks omitted).

*Hathaway* does not change or clarify the state law premise of *Mindis Metals*. The state law premise of *Mindis Metals* is that "an 'accident' does not include damage to persons or property when that damage is intentionally inflicted, even where that intentional conduct is caused by erroneous information." *Mindis Metals*, 209 F.3d at 1300. Because the effect of the subcontractor's negligence on the neighboring property was neither intended nor expected, *Hathaway* does not at all address the question whether an accident occurs when an insured intentionally inflicts property damage based on erroneous information.[4]

G.M. Sign relies on *Hathaway* to argue that, in the instant case, "had the act of faxing been performed correctly and faxes only been sent to consenting recipients, there would have been no injury." Appellant's Br. at 24; *see id.* at 18, 20. This argument is misplaced for two reasons. First, as we have explained, *Hathaway* did not change the premise of *Mindis Metals*, by which we are bound. *See World Harvest Church, Inc.*, 586 F.3d at 957. Second, contrary to G.M. Sign's

---

[4] Because we are bound by *Mindis Metals* and required to apply Georgia law, we decline to address the cases from other jurisdictions that G.M. Sign cites in support of its argument that an accident occurred here.

argument, the same property damage—the use of the recipients' fax machines and the corresponding depletion of the machines' ink and paper—would have resulted had the faxes been sent only to consenting recipients. MFG plainly intended to occupy the machines; whether it intended to violate the TCPA by sending the faxes without the recipients' consent is immaterial.

G.M. Sign urges the Court to follow a line of Georgia cases supporting the proposition that "the term 'accident' for purposes of property damage coverage . . . include[s] injuries resulting from negligence." Appellant's Br. at 21.[5] Assuming for purposes of this opinion that this is an accurate statement of Georgia law, it is not inconsistent with *Mindis Metals*. The term "accident" may at once include injuries resulting from negligence but exclude injuries resulting from intentional conduct premised on erroneous information. In determining whether an accident occurred, Georgia law asks whether a happening was expected or intended. *See Taylor Morrison*, 746 S.E.2d at 590-91 (defining the term "accident" as "an unexpected happening without intention or design" (internal quotation marks omitted)). Whether *the act that caused the happening* was intentional, negligent, or both is of no moment. *See Hathaway*, 707 S.E.2d at 372 ("A deliberate act,

---

[5] These cases include: *Maxum Indem. Co. v. Jimenez*, 734 S.E.2d 499 (Ga. Ct. App. 2012); *Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 648 S.E.2d 498 (Ga. Ct. App. 2007); *Allstate Ins. Co. v. Justice*, 493 S.E.2d 532 (Ga. Ct. App. 1997); and *Crook v. Ga. Farm Bureau Mut. Ins. Co.*, 428 S.E.2d 802 (Ga. Ct. App. 1993).

performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." (internal quotation marks omitted)).[6]  In this case, the result would not have been different had the deliberate act been performed correctly (*i.e.*, if the faxes had been sent to consenting recipients).

Because we decide that the Policies do not cover the property damage for which G.M. Sign seeks coverage, we do not address the applicability of any exclusions that might bar coverage.

## B.    St. Paul Is Not Estopped from Denying Coverage.

G.M. Sign argues that St. Paul is estopped under Illinois law from denying coverage because St. Paul breached its duty to defend MFG in the Illinois state court action brought by G.M. Sign.  St. Paul responds that Illinois law is inapplicable and that under Georgia law the wrongful denial of a duty to defend does not estop an insurer from contesting coverage.  St. Paul has the better side of this argument under the law of either state.[7]

---

[6] At oral argument, G.M. Sign's counsel relied on the Supreme Court of Georgia's decision in *Taylor Morrison* to argue that an accident occurred and coverage was triggered because the TCPA claims, as strict liability claims, could have been established without proving intent.  But G.M. Sign failed to raise this argument in its briefing, and we therefore decline to consider it.  *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review.").

[7] Although the parties agree that Georgia law governs the question whether the Policies provided coverage for MFG's TCPA liability, *see supra* note 2, the parties disagree as to whether Georgia or Illinois law controls the estoppel analysis.  G.M. Sign argues that Illinois law applies

St. Paul is correct that under Georgia law, an insurer that wrongfully denies a duty to defend is not estopped from later contesting coverage. *See Henning v. Cont'l Cas. Co.*, 254 F.3d 1291, 1295 (11th Cir. 2001) (concluding that under Georgia law, "an insurer is not estopped from asserting the defense of lack of coverage or other policy defenses even if it wrongfully fails to defend"). In contrast, under Illinois law, an insurer that fails to defend its insured under a reservation of rights or seek a declaratory judgment that no coverage exists "and is later found to have wrongfully denied coverage . . . is estopped from raising policy defenses to coverage." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134-35 (Ill. 1999). Nevertheless, "[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend." *Id.* at 1135. And an insurer has no duty to defend under Illinois law when a comparison of the policy and the complaint indicates that "there clearly was no coverage or potential for coverage." *Id.* We need not decide whether Illinois law applies because even assuming it does, the result is the same. Here, G.M. Sign's complaint in the Illinois state court action failed to allege facts that would have triggered coverage because the complaint failed to allege that MFG caused unexpected or unintended property damage by sending junk faxes to G.M. Sign and others. Therefore, St.

---

because G.M. Sign filed the action against MFG, for which St. Paul refused to defend or indemnify MFG, in Illinois state court.

16

Paul is not estopped from contesting coverage under the law of either Georgia or Illinois.

## IV.    CONCLUSION

We conclude that the Policies provided MFG with no coverage here because no accident occurred when MFG intentionally sent faxes with the mistaken belief that the recipients had consented to receive them.  We further conclude that St. Paul is not estopped from denying coverage.  We therefore affirm the district court's grant of summary judgment to St. Paul.

**AFFIRMED.**