Randy STAHL, Plaintiff,

v.

**NORTHERN ASSURANCE COMPANY OF AMERICA, Defendant.**

Civ. A. No. 88–294–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

June 28, 1989.

---

Lawrence O. Guillory, Warner Robins, Ga., for plaintiff.

William H. Larsen, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

The above-captioned matter is before the court on cross-motions for summary judgment. Having considered the pleadings and having read the various affidavits and depositions, this court now issues the following order.

Maxine Lamendola is the wife of Peter Lamendola and the mother of plaintiff Randy Stahl. Peter Lamendola is Randy Stahl's stepfather. On or about March 2, 1985, during a violent quarrel and after firing a warning shot into the ground, Peter Lamendola shot and seriously injured plaintiff Stahl.

At the time of this incident, Peter Lamendola was an insured under a homeowners insurance policy issued by defendant Northern Assurance Company of America ("Northern Assurance"). In Section II of that policy, under "Exclusions," the policy provides that "Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: a. which is expected or intended by the insured...." Defendant's Exhibit No. 1, attached to November 2, 1988, Deposition of Peter Lamendola ("November Lamendola Deposition"). At no time from March 2, 1985, to the present has Peter Lamendola informed his homeowners insurance carrier of a possible claim for the injuries inflicted upon plaintiff Stahl. However, several months after the incident, Mrs. Lamendola contacted the insurance agent's office regarding a potential claim.

Defendant's adjuster responded to Mrs. Lamendola's notification of a possible claim and investigated the incident. Pursuant to a meeting with Mr. Lamendola, his attorney Mr. Mike Long, and Mr. Gary Griffin, an insurance adjuster for defendant Northern Assurance, the following affidavit was developed:

On March 2, 1985 I was involved in an altercation with my stepson, Randy Stahl at my home located at 403 Willow Avenue, Warner Robins, Georgia. An argument started involving myself, Randy and my wife, Maxine Lamendola concerning a request by Randy to take his daughters out to fly a kite. Randy had been drinking and began cursing me and his mother when we told him that we were not going to let him take the children in his condition. The argument resulted in a shooting incident in which I shot Randy, fully believing that this was necessary to protect myself. This incident was not an accident.

Sworn to this 30th day of January, 1986.

Defendant's Exhibit No. 3, attached to November Lamendola Deposition. Statements from investigating police officers and the investigative file support Mr. Lamendola's affidavit. *See* Affidavits of Malcolm Derrick and Andrew Chratian and the investigative files attached thereto. Mike Long, Mr. Lamendola's attorney who was present during the meeting involving Mr. Lamendola and Mr. Griffin, stated in relevant part as follows:

On or about January 30, 1987, Mr. Griffin met with me and Mr. Lamendola in our office. After reviewing the facts of the shooting incident orally with Mr. Griffin, my secretary prepared an affidavit which was signed by Mr. Lamendola and notarized by me. A copy of said affidavit is attached hereto as Exhibit "A." This affidavit correctly stated the facts as related by Mr. Lamendola to me

and Mr. Griffin. Mr. Lamendola had no reservation that he fired the gun at Mr. Randy Stahl in self-defense. Since the affidavit was a true statement of the facts as I knew them to be, I advised Mr. Lamendola to sign the affidavit after first advising him that the probable effect would be to invalidate any insurance coverage for the claim being asserted against him by Mr. Randy Stahl.

Affidavit of Michael J. Long, ¶ 2. Based upon its investigation, defendant Northern Assurance denied coverage for the shooting of plaintiff Randy Stahl. This court finds as an undisputed fact that such denial was justified. *See Stein v. Massachusetts Bay Insurance Company,* 172 Ga.App. 811, 324 S.E.2d 510 (1984) (provision in policy excluding coverage for bodily injury which is expected or intended by insured applies where insured knowingly shoots another, even if shooting is in self defense).

On March 13, 1986, some six weeks after the meeting involving Mr. Lamendola, Mr. Long and Mr. Griffin, a civil lawsuit was filed in the state court for Houston County, Georgia.[1] *See* Defendant's Exhibit No. 2 (a copy of the civil action, Case No. 16848), attached to November Lamendola Deposition. That lawsuit alleged that Mr. Lamendola was guilty of gross negligence and wilful and wanton misconduct, and in that suit Randy Stahl sought both compensatory and punitive damages. Defendant Northern Assurance refused to defend Mr. Lamendola based upon the earlier affidavit and the policy exclusion. In the course of a deposition taken in conjunction with that lawsuit, Pete Lamendola gave inconsistent answers to questions propounded by Mr. Guillory regarding the shooting. When asked if he (Mr. Lamendola) intended to shoot plaintiff Stahl and if he (Mr. Lamendola) expected the gun to discharge, Mr. Lamendola answered "no." October 6, 1986, Deposition of Pete Lamendola ("October Lamendola Deposition"), pp. 32–33. Later, at pages 43–45, the following diologue ensued:

A Well, there—he was loaded there [on March 2, 1985]. I didn't know what he was going to do. I mean if somebody is hooped up there, they are liable to do anything when they are arguing there, and waving their hands at you there, and arms there, like they are going to hit you or something.

Q Did he say he was going to hit you?

A Well, it just looked like he was going to do it there. He said that "You can't tell me what to do, and that sort of stuff." And he kept moving around his arms there (indicating), and I got scared.

Q After you got your gun, were you scared any more?

A Yeah. I was scared.

Q Why?

A Well, of what happened.

Q And you had a gun?

A I was scared—I don't understand what you are saying. I was scared. Was I scared after it happened, you mean?

Q No. Were you scared when you had the gun? Were you scared of him when you had a gun in your hand?

A Yeah, I was scared.

Q Did he have a knife or something?

A No, but he had his two arms.

Q That two arms makes you afraid?

A Yeah.

Q And that's why you shot him?

A Well, I was scared he was going to hurt me.

Q But you didn't intend to actually shoot him, did you?

A (Pause)

Q That gun went off accidentally, didn't it?

A I just shot him there, because I was scared he was going to hurt me.

Q Now, but the gun went off accidentally, didn't it?

MR. LONG: Mr. Lamendola, he's already asked you this question about three times. And, again, I'm going to instruct you to disregard it.

---

1. Attorney for plaintiff Randy Stahl in the state court litigation was Mr. Lawrence O. Guillory.

Mr. Guillory also represents Mr. Stahl in the instant action.

Q (By Mr. Guillory) Haven't you told Randy at the hospital that "it was an accident that you were shot?"

A No. I didn't tell him that.

Q You didn't tell anybody else that it was an accident that Randy was shot?

A No.

Q No one at all? You never made that statement?

A No.

\* \* \* \* \* \*

Q Have you ever told your wife you never intended to shoot Randy?

A I don't know.

Q Do you have a hard time remembering these things?

A Yeah.

Q What did you do after the shooting, Mr. Lamendola?

A Well, I went outside there, and my neighbor was in the yard there. And I told him to call an ambulance.

Q O.K. And then what?

A Well, the ambulance came, and the police came. And they took me to the police station.

Q And you were booked over there?

A Yeah.

■ Case No. 16848 ended in a consent judgment entered against Mr. Lamendola. *See* Defendant's Exhibit No. 6, attached to November Lamendola Deposition. Such judgment was entered pursuant to stipulated findings of facts and conclusions of law drafted by plaintiff Stahl's attorney, Mr. Guillory. Those findings stated that "[a]t the time of the shooting Pete Lamendola had not intended or expected the gun he was holding to discharge and injure Randy Stahl" and that "[t]he discharge of the gun held by Pete Lamendola was due to the negligence of Pete Lamendola." Defendant's Exhibit No. 5, ¶¶ 3 and 4, attached to November Lamendola Deposition. Plaintiff now contends that the findings and conclusions quoted above and the judgment entered against Mr. Lamendola pursuant thereto are binding upon this court and that defendant Northern Assurance is collaterally estopped from arguing to the contrary.

Without delving too deeply into the morass surrounding the concepts of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion), the court notes the following prerequisites to the application of collateral estoppel:

(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *DeWeese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982). In addition, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Precision Air Parts, Inc. v. Avco Corp*, 736 F.2d 1499, 1504 (11th Cir.1984). The application of collateral estoppel is committed to the sound discretion of the district court. *DeWeese*, 688 F.2d at 734.

*Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985). Regarding the application of collateral estoppel to the matter before this court, the law provides that "a consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue." *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir.1986).

The evidence in this case is to the contrary. Here, instead of evidencing an intent to adjudicate the issues, the evidence weighs heavily in favor of plaintiff's blatant attempt to manipulate the system as a means of wrongfully recovering money from defendant Northern Assurance. The following statements contained in Michael Long's affidavit are probative on this matter:

The aforementioned civil suit for personal injuries filed by Mr. Randy Stahl against Mr. Pete Lamendola sought both compensable damages and punitive dam-

ages on the allegation that the shooting was an intentional tort. An agreement was reached between me, as attorney for Mr. Lamendola, and the attorney for Mr. Randy Stahl pursuant to which a consent judgment would be entered against Mr. Lamendola based on a stipulation that the shooting was the result of a negligent act rather than an intentional tort. Since the result of such a stipulation would make the judgment dischargeable in bankruptcy if Mr. Stahl attempted to collect on the same against Mr. Lamendola, I advised Mr. Lamendola to agree to the consent judgment and stipulation. Although the shooting was not an accident as stated in the stipulation, I felt it was in my client's best interest to agree to a judgment finding him guilty of negligence rather than subjecting him to a possible verdict by a jury for punitive damages based on an intentional act, which damages would not be dischargeable in bankruptcy.

Affidavit of Michael J. Long, ¶ 3.

The comments in Mr. Lamendola's November Deposition are likewise instructive. In explaining the events of March 2, 1985, Mr. Lamendola stated that he shot Mr. Stahl as Stahl approached him and that he feared Mr. Stahl would attack him. November Lamendola Deposition, pp. 12–15. Mr. Lamendola, after being shown his affidavit prepared in January of 1986 and after having that affidavit read to him, stated that the information contained therein was the truth. *Id.* at 21–22. On cross-examination by Mr. Guillory, Mr. Lamendola stated unequivocally that he "intended to shoot him there, he was coming at me." *Id.* at 28. In explaining to Mr. Guillory certain responses during the October, 1986, deposition regarding any expectations that the gun might discharge, Mr. Lamendola stated as follows: "I can't see how I said that there when I had that gun in my hands there. It didn't go off by itself." *Id.* The discussion continued, in relevant part, as follows:

Q So you are changing your testimony today saying that you intentionally shot Randy?

A Well, it was no accident.

Q You are changing the testimony from that time to what you are saying now, that you intentionally shot him?

A I don't remember really what I—you had said there. It was so long.

Q Question, next question, "The whole purpose of it was just to scare him; isn't that correct? Was the shooting accidental?" Answer, "Well, just a reflex there, him coming at me there, and I got scared and reflexes." Nothing about you intentionally shooting anyone.

MR. EDWARDS: Wait a minute now. Where are you?

MR. GUILLORY: Page 33.

MR. EDWARDS: He didn't say nothing about him intentionally shooting—

MR. GUILLORY: Excuse me, No, I just—that was my question to him.

MR. EDWARDS: Okay.

Q BY MR. GUILLORY: There was nothing in that answer that says you intended to shoot him?

A I guess I did intend to shoot him there. I had the gun in my hand.

*Id.* at 28–29 (Mr. Guillory is in some places reading from the October Lamendola Deposition).

Based upon the complete record and particularly upon the above statements made by Mr. Long and Mr. Lamendola, this court determines that the doctrine of collateral estoppel cannot be appropriately applied in this case.[2]

---

2. The court notes that the issue to which plaintiff seeks to apply collateral estoppel is properly neither the erroneous factual stipulation drafted by Mr. Guillory nor the presumptive legal conclusion that Mr. Lamendola was negligent but is instead the factual question of whether the injuries in question are properly excluded by the policy. Additionally, the court finds it clear that the above factual issue was not actually litigated in the prior litigation. " 'If an insurer with an option to defend chooses to remain aloof from that litigation, it is estopped only as to factual matters essential to the judgment rendered in the first suit, and does not waive any legal defenses it may have as to liability on the policy.' " *Robertson v. Central Mutual Insurance Co.,* 165 Ga.App. 167, 169, 299 S.E.2d 894, 895 (1983), quoting *Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977). " 'Neither waiver nor estoppel can be used to create a liability not

Mr. Lamendola's statements recorded in his November Deposition clarify the uncertainties and inconsistencies evident in his October Deposition and bring his testimony into agreement with all of the remaining evidence in this case. This court finds as a matter of undisputed fact that Mr. Lamendola went to his garage and located his gun in hopes that its presence would terminate the altercation and encourage Randy Stahl to leave the premises. When those hopes were dashed, Mr. Lamendola, fearing for his safety, intended to and did shoot Randy Stahl. In that Mr. Lamendola intended to shoot the plaintiff, and therefore expected to cause plaintiff some degree of bodily injury, the exclusion quoted earlier clearly applies. The insurance policy simply does not cover the injuries suffered by Mr. Stahl.

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Having considered the evidence and all factual inferences therefrom in the light most favorable to the nonmovant, *see Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 639 (11th Cir.1984), this court determines that no genuine issues of material fact remain for submission to a jury. Since the insurance policy does not apply, defendant's motion for summary judgment is hereby GRANTED. Plaintiff's motion to the contrary is DENIED.

SO ORDERED.

---

created by the contract and never assumed by the insurer under the terms of the policy.'" *Robertson,* 165 Ga.App. at 169, 299 S.E.2d at 895, quoting *Washington v. Hartford Acc. & Indemnity Co.,* 161 Ga.App. 431, 432, 288 S.E.2d 343, 344 (1982).