United States Court of Appeals,

Eleventh Circuit.

No. 95-9603.

COLONIAL OIL INDUSTRIES, INC., Colonial Terminals, Incorporated, Plaintiffs-Counter-defendants-Appellees-Cross-Appellants,

v.

UNDERWRITERS SUBSCRIBING TO POLICY NOS. TO31504670 AND TO31504671, Defendants-Counter-claimants-Appellants-Cross-Appellees.

Feb. 27, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV-494-10), B. Avant Edenfield, Chief Judge.

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and CLARK, Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

This panel of the United States Court of Appeals for the Eleventh Circuit believes that this case involves unanswered questions of state law that are determinative of this appeal, and we can find no clear, controlling precedents in the decisions of the Supreme Court of Georgia. Therefore, we certify the following questions of law, based on the facts and procedural history recited below, to the Supreme Court of Georgia for instructions.

FACTS

Colonial Terminals, Inc., a subsidiary of Colonial Oil Industries, Inc. (collectively, Colonial), operates several cargo

terminals and storage facilities on the Savannah River. Colonial uses these facilities for the petroleum products operations of the parent company as well as for third-party shipping and storage. In 1990, Colonial purchased comprehensive general liability (CGL) and terminal liability insurance coverage from an insurance underwriters cooperative (the Underwriters) through a local insurance agent, Palmer & Cay/Carswell, Inc. (Palmer & Cay), and a broker in London, England, R.L. Harley Insurance Associates, Ltd. (Harley). The policy period covered the occurrence of the events at issue herein.

In 1991, Colonial contracted to dredge part of the river in order to construct a new pier. Colonial contracted to deposit the dredged materials on a nearby island owned by Charles Gay. On April 17, 1991, Colonial and Gay signed a "Spoilage Disposal Easement" permitting Colonial to deposit "clean fill" on Gay's property.[1] Palmer & Cay, acting on behalf of the Underwriters, issued a certificate of insurance on August 9, 1991, naming Gay as additional insured for all work performed by or on behalf of Colonial relating to the dredging and disposal operations.

Colonial obtained the necessary permits from the United States Army Corps of Engineers (ACE) and the Georgia Department of Natural Resources, Environmental Protection Division, and initiated the dredging in early September 1991. The ACE's permit described the materials expected to be deposited as ranging from "firm silty sand to gray sandy clay." Gay inspected the disposal site and found

---

[1]The easement defined "clean fill" as "material which is in full compliance with all Environmental Laws, and does not contain any Hazardous Materials."

that the dredge spoil contained bricks, wire cable and lumber materials.  Gay had expected Colonial to deposit only "sandbox quality" sand.  On September 12, 1991, Gay demanded that Colonial cease the disposal.  Colonial inspected the site and determined that the spoil came within the terms of the agreement, deciding that those waste materials present could be separated and removed at a later date.

While Colonial declined to stop the disposal on Gay's property, it sent a letter to Palmer & Cay on September 19, 1991, informing them of Gay's objections.  On October 7, 1991, Palmer & Cay forwarded the information to Harley.  Harley misplaced the letter from Palmer & Cay and neglected to inform the Underwriters.

Gay filed an action against Colonial in the United States District Court for the Southern District of Georgia on April 17, 1992, demanding that Colonial remove the spoil.  Gay asserted that Colonial breached the easement by (1) depositing material other than the "clean fill" specified in the agreement;  (2) allowing liquid runoff to flood portions of the island;  and (3) dumping hazardous materials onto his property.  Gay also claimed damages for nuisance and trespass.[2]

Colonial forwarded a copy of the Gay complaint to the Underwriters.  The Underwriters argue that they had no notice of the dispute prior to receiving the complaint.[3]  On June 16, 1992,

---

[2]Gay amended the complaint in August 1992 to claim damages under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.,* after the Underwriters declined to defend Colonial.

[3]The parties contest whether Palmer & Cay's notification to Harley in October 1991 constituted notice to the Underwriters

the Underwriters informed Colonial that they would not defend against Gay's suit, "based on the pleadings in the case which have been furnished to us," pursuant to the CGL policy's coverage limitations. The Underwriters' letter denying coverage claimed that they had based their decision on the "facts as have been alleged and thus the facts that are known to us thus far." The Underwriters suggested that Colonial submit to a "standstill agreement" with them regarding the coverage issue until Colonial resolved the suit. The Underwriters also acknowledged that "black letter law dictates" that they obtain a declaratory judgment affirming their denial of coverage. Colonial neglected to respond to the letter, and the Underwriters did not seek a declaratory judgment. On September 18, 1992, Colonial settled with Gay, agreeing to purchase the property for $900,000 and to pay $850,000 as a settlement, $400,000 of which constituted reimbursement for attorney's fees.

## PROCEDURAL HISTORY

On November 10, 1993, Colonial brought a subsequent defense and indemnity action against the Underwriters in the Superior Court of Chatham County, Georgia, seeking (1) reimbursement for the $850,000 settlement, (2) attorney's fees for the Gay defense, (3) prejudgment interest, and (4) a 25-percent statutory penalty under Georgia law.[4] The Underwriters removed the action to the United States District Court for the Southern District of Georgia on

regarding the dispute.

[4]*See* O.C.G.A. § 33-4-6 (imposing a penalty for an insurer's bad faith refusal to pay a covered claim within sixty days).

January 14, 1994. On August 9, 1994, the Underwriters moved for summary judgment asserting coverage defenses.[5] The district court denied the Underwriters' motion on January 18, 1995, and directed Colonial to file a summary judgment motion. On February 7, 1995, Colonial complied with the court's request and moved for partial summary judgment regarding the Underwriters' duties to defend and indemnify Colonial.

On August 15, 1995, the district court issued an order denying both parties' motions *in limine* regarding evidentiary materials. In its order, the court analyzed the CGL coverage. The court also discussed the Underwriters' duty to defend Colonial, and the potential waiver and estoppel ramifications arising from a breach thereof. The court suggested that the Underwriters' unjustifiable failure to defend Colonial or obtain a protective declaratory judgment constituted a waiver of the policy defenses, thus estopping the Underwriters from raising these defenses in the indemnification action. Acknowledging that Colonial framed the estoppel issue differently than the court discussed, however, the court provided the Underwriters with notice of the estoppel issue and directed the parties to brief the issue along with the question of the type and amount of damages. The parties thereafter complied with the court's directive.

On November 6, 1995, the court granted Colonial summary judgment and awarded Colonial $1,284,381.48. The court reiterated

---

[5]Specifically, the Underwriters contended that the waste, disposal and contamination exclusions precluded coverage of the Gay action. These provisions excluded coverage for liability due to the disposal of contaminated or polluted dredge materials.

its finding in the August 15 order, holding that the Underwriters breached their duty to defend in (1) relying solely on the terms of the Gay complaint in declining to defend Colonial, and (2) failing to obtain a declaratory judgment affirming their decision. The court held, citing *Loftin v. United States Fire Insurance Co.,* 106 Ga.App. 287, 127 S.E.2d 53 (1962), that Georgia law imposes a duty on an insurer to investigate and thus does not permit the insurer to rely solely on the terms of the complaint in determining its duty to defend. As a result of the Underwriters' unjustified breach, the court estopped them from raising policy defenses in the indemnification action. The court recognized that *McCraney v. Fire & Casualty Insurance Co.,* 182 Ga.App. 895, 357 S.E.2d 327 (1987), and *Eason v. Weaver,* 557 F.2d 1202 (5th Cir.1977), reject the complete estoppel doctrine, but the court distinguished those cases on the ground that the plaintiffs therein were not in direct privity with the insurer. The court awarded Colonial settlement and defense costs, and prejudgment interest. The court denied, however, Colonial's request for the 25-percent statutory penalty. As to that issue, the court held that the Underwriters' actions did not warrant a penalty because they had not acted in bad faith. The court later granted the Underwriters' motion to amend the judgment and denied Colonial attorney's fees for the coverage suit, reducing the judgment to $1,148,052.90. The Underwriters appeal and Colonial cross-appeals the rulings of the district court.

## DISCUSSION

It is well-settled under Georgia law that the insurance contract determines whether the insurer has a duty to defend its

insured. *See Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 259 S.E.2d 39, 40 (1979). It is less clear, however, what duty Georgia law imposes on an insurer to investigate a third-party's claim against its insured in order to determine whether the insurer is required to defend the action. Georgia law also remains unclear on the issue of whether, and to what extent, an insurer should be estopped from raising coverage defenses following a breach of its duty to defend. We ask the Georgia Supreme Court to address these two issues.

The Underwriters contend that Georgia law does not impose a duty on an insurer to investigate—in order to determine whether the policy language imposes a duty to defend—a claim brought against its insured beyond the third party's complaint and supporting materials. The Underwriters rely primarily on *McKemie.* In that case, a landlord sued her insurer for wrongful refusal to defend a suit that tenants brought against her. After the trial court held that the complaint failed to allege liability covered under the policy, the Georgia Court of Appeals reversed, holding that the insurer had a duty to defend because "later-revealed facts" could have arisen to impose a duty to defend. The Georgia Supreme Court reversed the appeals court, however, holding that the law only requires an insurer to rely on "the information it had at the outset" to determine its duty to defend. *McKemie,* 259 S.E.2d at 40. The decision noted the distinction between groundless suits, which the insurer is obligated to defend, and suits "which, even if successful would not be within the policy coverage." *McKemie,* 259 S.E.2d at 40 (citation omitted).

The Underwriters find support in the *McKemie* decision for the proposition that an insurer need only look to the four corners of the complaint to determine its duty to defend.  *See McKemie,* 259 S.E.2d at 41 ("[T]he allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted*.") (internal quotation marks omitted).  *McKemie* also noted with approval *Morgan v. New York Casualty Co.,* 54 Ga.App. 620, 188 S.E. 581 (1936), in which "the complaint showed on its face that the injuries were not covered by the policy."  *McKemie,* 259 S.E.2d at 40 n. 3. In addition, the Underwriters assert that *McKemie* places the burden on the insured, not the insurer, to discover facts creating the duty to defend.  *See McKemie,* 259 S.E.2d at 41 (if insured finds later-revealed facts creating coverage, "she [is] under a duty to send this information to [the insurer] and again call upon it to defend").  Finally, the Underwriters point to supporting language from the Georgia courts of appeals suggesting that *McKemie* supports the conclusion that Georgia adheres to the exclusive pleading rule.  *See Al Who Enters. Inc. v. Capitol Indem. Corp.,* 217 Ga.App. 423, 457 S.E.2d 696, 698 (1995);  *Brayman v. Allstate Ins. Co.,* 212 Ga.App. 96, 441 S.E.2d 285, 285-86 (1994); *Hames Contracting, Inc. v. Georgia Ins. Co.,* 211 Ga.App. 852, 440 S.E.2d 738, 739 (1994);  *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.,* 203 Ga.App. 508, 417 S.E.2d 197, 198 (1992);  *Cantrell v. Allstate Ins. Co.,* 202 Ga.App. 859, 415 S.E.2d 711, 712 (1992); *Batson-Cook Co. v. Aetna Ins. Co.,* 200 Ga.App. 571, 409 S.E.2d 41, 42 (1991);  *Presidential Hotel v. Canal Ins. Co.,* 188 Ga.App. 609, 373 S.E.2d 671, 672 (1988).

In response, Colonial argues that the insured's notice to the insurer that the "true facts" bring the claims within the coverage provisions of the policy imposes a duty on the insurer to conduct a reasonable investigation of the claim. Colonial relies on the decision in *Loftin* for support. *Loftin* involved an insured's suit against his insurer seeking reimbursement for attorney's fees that the insured paid after the insurer refused to defend. In finding for the insured, the Georgia Court of Appeals held that "when the complaint against the insured alleges untrue facts placing the claim within an exception in the policy, but the true facts, known or ascertainable to insurer, are within coverage, the insurer is obligated to defend the suit." *Loftin,* 127 S.E.2d at 59.

It is the term "ascertainable" upon which Colonial bases its argument. Colonial contends that *Loftin* requires an insurer to conduct a reasonable investigation when the insured provides notice that the claim actually falls within the policy's coverage.[6] As *Loftin* stated, "[w]ith respect to an exception to the duty to defend, this burden [on an insurer to prove that an exception exists] is not carried merely by proving that the allegations of the complaint allege[ ] facts excluding the claim from the policy." *Loftin,* 127 S.E.2d at 58. Colonial argues that *McKemie* also provides support for this proposition through its discussion of "true facts." Moreover, Colonial asserts that the cases which the Underwriters cite should be distinguished because they fail to cite

---

[6]Colonial also avers that the duty to defend arises where the third-party's complaint contains covered claims and noncovered claims pleaded in the alternative, as in the Gay complaint.

*Loftin* or discuss factual situations where the insured charges that the allegations in the complaint falsely preclude coverage. Colonial avers that the decisions of the Georgia courts of appeals support imposing a duty to investigate. *See Associated Petroleum Carriers, Inc. v. Pan American Fire & Cas. Co.,* 117 Ga.App. 714, 161 S.E.2d 411, 413 (1968); *State Farm Mut. Auto. Ins. Co. v. Keene,* 111 Ga.App. 480, 142 S.E.2d 90, 91-92 (1965). Furthermore, Colonial argues that a duty to investigate provides protection for the insured, while the insurer can obtain a declaratory judgment or stipulate to a reservation of rights, neither of which the Underwriters chose to pursue. Finally, Colonial contends that public policy requires the imposition of a duty to investigate because a contrary rule would allow insurers to rely unreasonably on the averments of a third party rather than its insured.

The second issue we certify is whether the Underwriters' failure to defend here effectuates a waiver of the defenses and exclusions available pursuant to the policy, and thus estops them from raising such policy defenses. The Underwriters contend that the Georgia courts of appeals have consistently rejected the complete estoppel theory. *See Keene,* 142 S.E.2d at 92-93 (specifically rejecting complete estoppel theory); *see also Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.,* 212 Ga.App. 642, 442 S.E.2d 778, 783 (1994); *Moore v. State Farm Mut. Auto. Ins. Co.,* 196 Ga.App. 755, 397 S.E.2d 127, 129 (1990); *Robertson v. Central Mut. Ins. Co.,* 165 Ga.App. 167, 299 S.E.2d 894, 895 (1983). The Underwriters argue that the Georgia courts have instead accepted a more limited estoppel doctrine, which precludes the

insurer from objecting to the outcome of the litigation against its insured or the manner in which the parties concluded the action. *See McCraney v. Fire & Cas. Ins. Co.,* 182 Ga.App. 895, 357 S.E.2d 327, 328 (1987) (insurer estopped from contesting determination of liability against insured); *Argonaut Ins. Co. v. Atlantic Wood Indus., Inc.,* 187 Ga.App. 471, 370 S.E.2d 765, 770 (1988) (insurer estopped from exercising "no action clause" contained in the policy), *rev'd on other grounds,* 258 Ga. 800, 375 S.E.2d 221 (1989); *Georgia S. & Fla. Ry. Co. v. United States Cas. Co.,* 97 Ga.App. 242, 102 S.E.2d 500, 502 (1958) (insurer estopped from challenging good faith settlement). As stated in *Aetna,* "[w]hile it is true that an insurer loses its opportunity to contest the negligence of the insured or the injured person's right to recover by refusing to defend, the insurer does not lose its right to contest the insured's entitlement to a recovery under its policy." *Aetna,* 442 S.E.2d at 783.

Colonial counters that Georgia law estops an insurer who unjustifiably declines to defend its insured. *Cf. Loftin,* 127 S.E.2d at 59. Colonial contends that the cases the Underwriters cite can be distinguished because they involve claims of third-party subrogees against the insurer, rather than claims of first-party insureds as in the case at bar. Colonial also argues that case law exists to support the complete estoppel theory. Colonial specifically looks to the decision in *Keene,* which held that "[b]y an unjustified refusal to defend an action against the insured the insurer becomes subject to certain new and positive obligations, including liability for the amount of the judgment

rendered against the insured." *Keene,* 142 S.E.2d at 92. Finally, Colonial contends that the cases applying the doctrine of partial estoppel to liability, settlements and no-action clauses provide support for complete estoppel.

We, therefore, request the assistance of the Georgia Supreme Court to resolve the estoppel issue. It appears to this court that the Georgia courts of appeals oppose the complete estoppel doctrine and we acknowledge that previous decisions of this circuit have refused to estop insurers from raising policy defenses. *See Spencer v. Assurance Co.,* 39 F.3d 1146, 1149 n. 5 (11th Cir.1994); *Stahl v. Northern Assurance Co.,* 716 F.Supp. 626, 630 n. 2 (M.D.Ga.1989), *aff'd,* 894 F.2d 413 (11th Cir.1990); *Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977). We note, however, that the Georgia Supreme Court has not yet ruled on this issue, and we prefer to defer to its authority on matters of state law.

Accordingly, we certify the following questions to the Supreme Court of Georgia:

1) Does an insurer have a duty to conduct a reasonable investigation of facts outside those presented in the complaint, or otherwise presented to the insurer by its insured, prior to determining whether to defend a claim brought against the insured?

2) To what extent does Georgia law estop an insurer from raising coverage defenses after the insurer, without performing an investigation into the third-party's allegations, seeking a declaratory judgment, or stipulating to a reservation of rights, refuses to defend the insured?

The phrasing of these questions is to be used for guidance and is not intended to limit the Supreme Court of Georgia in considering the issues presented or the manner in which it gives its answers. *Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968). The

clerk of this court shall transfer this certificate, the briefs of the parties and the entire record in this case to the Supreme Court of Georgia for assistance in answering these questions.

QUESTIONS CERTIFIED.